IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>ISAAC AUMAN SANT(1),<br>a/k/a "Isaac Dalto,"<br>a/k/a "Ike,"<br>Defendant. | FILE NO. 26-cr-115 (KMM/DTS) |
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>EMMETT JAMES DOYLE(2),<br>a/k/a "Plotnikov,"<br>Defendant. | FILE NO. 26-cr-115 (KMM/DTS) |
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>CAMERON KENNEDY(3),<br>a/k/a "Cam,"<br>a/k/a "Olive Knite,"<br>a/k/a "Knite,"<br>Defendant. | FILE NO. 26-cr-115 (KMM/DTS) |

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) FILE NO. 26-cr-115
) (KMM/DTS)
CALLUM ROBINET(4), )
a/k/a "Juliet K," )
a/k/a "Juliet," )
a/k/a "Cal," )
)
Defendant. )
)
_______________________________________)

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) FILE NO. 26-cr-115
) (KMM/DTS)
ERIK DAVIS(5), )
a/k/a "Errico," )
)
Defendant. )
)
_______________________________________)

TRANSCRIPT OF ELECTRONICALLY RECORDED PROCEEDINGS
JUNE 16, 2026
BEFORE THE HONORABLE JOHN F. DOCHERTY
UNITED STATES MAGISTRATE JUDGE
DEVITT COURTROOM
ST. PAUL, MINNESOTA
INITIAL APPEARANCE HEARING

A P P E A R A N C E S

SOMMER LINDSAY HONEYCUTT (Assistant United States Attorney) and ROBERT TUCKER (Special Assistant United States Attorney), District of Minnesota, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, appeared on behalf of the plaintiff.

KEVIN C. RIACH, Attorney at Law, CJA Panel Attorney, 125 Main Street SE, Suite 339, Minneapolis, Minnesota 55414, appeared on behalf of Defendant Isaac Auman Sant(1).

DAN HUDDLESTON and AARON MORRISON, Assistant Federal Public Defenders, District of Minnesota, Office of the Federal Public Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, appeared on behalf of Defendants Emmett James Doyle(2), Cameron Kennedy(3), Callum Robinet(4).

JORDAN S. KUSHNER, Attorney at Law, Law Office of Jordan S. Kushner, 431 South Seventh Street, Suite 2446, Minneapolis, Minnesota 55415, appeared on behalf of Defendant Erik Davis(5).

JUNE 16, 2026, ELECTRONICALLY RECORDED PROCEEDINGS

*(On the record at 2:24 p.m.)*

**THE DEPUTY COURT CLERK:** All rise.

**THE COURT:** Good afternoon, everyone. Please be seated.

All right. Good afternoon, everyone. My name is John Docherty. I'm a federal magistrate judge. We're here this afternoon for initial appearances under Rule 5 of the Federal Rules of Criminal Procedure in the cases of the *United States of America versus Isaac Auman Sant*.

Mr. Sant, are you here?

**ATTORNEY RIACH:** He is.

**THE COURT:** Good afternoon, sir.

**ATTORNEY RIACH:** Mr. Sant is here, Your Honor. Yes.

**THE COURT:** Good afternoon.

The *United States of America versus Emmett James Doyle*?

Good afternoon, Mr. Doyle.

**DEFENDANT DOYLE:** Afternoon.

**THE COURT:** Excuse me.

The *United States of America versus Cameron Kennedy*.

**DEFENDANT KENNEDY:** Here.

**THE COURT:** Good afternoon, Mr. Kennedy.

**DEFENDANT KENNEDY:** Good afternoon.

**THE COURT:** And the *United States of America versus Callum Robinet*.

**DEFENDANT ROBINET:** It's Callum.

THE COURT: Mr. Robinet, good afternoon.

Let's begin, also, with appearances for counsel for the United States.

ATTORNEY HONEYCUTT: Good afternoon, Your Honor. Sommer Honeycutt for the United States. And I have Robert Tucker here at the table, though I am the prosecuting attorney.

THE COURT: Okay. Good afternoon, Ms. Honeycutt.

And good afternoon, again, Mr. Tucker.

ATTORNEY HONEYCUTT: Thank you.

THE COURT: And let's get appearances, please, for counsel for the defense.

ATTORNEY RIACH: Good afternoon, Your Honor. Kevin Riach appearing on behalf of Mr. Sant.

THE COURT: Good afternoon, Mr. Riach.

ATTORNEY HUDDLESTON: Good afternoon, Your Honor. Dan Huddleston and Aaron Morrison on behalf of Mr. Doyle, Mr. Kennedy, and also Mr. Robinet.

THE COURT: Okay. And do you need to be appointed?

ATTORNEY HUDDLESTON: We will be requesting the appointment for the purposes of first appearances.

THE COURT: Okay.

ATTORNEY HUDDLESTON: Yes, Your Honor.

THE COURT: Thank you.

ATTORNEY KUSHNER: Good afternoon, Judge. Jordan Kushner representing Erik Davis.

**THE COURT:** Okay.

**ATTORNEY KUSHNER:** Haven't had a chance to put in an appearance yet. We just met. And I'll be seeking appointment. And if another appointed, then we'll figure it out from there.

**THE COURT:** All right. That sounds fine. Good afternoon to you, Mr. Kushner.

So, everyone, we're going to be doing several things here this afternoon, and so let me just give you a preview. First of all, we're going to make sure that each of you is represented by an attorney. One of the rights you have under the U.S. Constitution is the right to be represented by a lawyer all the way through a criminal case.

I'm going to make sure that you have seen a copy of the Indictment in this case. I know it's very long, but, basically, what I will want to know is whether you understand what it is the authorities claim you did that broke the law.

And I'm going to advise you of some -- not all, but some of your Constitutional rights. And I say some, not all, because I'm going to concentrate on the ones that are most applicable to a proceeding like this one. And then we're going to find out from Ms. Honeycutt and Mr. Tucker whether the prosecution is all right with you being released on conditions or whether they believe that you need to be detained as the case goes forward, and we'll take that up at the appropriate time.

I also want to thank everyone for your patience. I know we started a little bit late. There were more people here than I -- I think we anticipated, which is fine, but it did slow us down just a little bit. And I thank you for your patience regarding that.

So let's just sort of go around the table.

Mr. Sant, are you represented by an attorney? Have you retained an attorney?

**DEFENDANT SANT:** Yes.

**THE COURT:** Okay.

Mr. Riach, you've been retained?

**ATTORNEY RIACH:** Your Honor, I'll be seeking a CJA appointment to represent --

**THE COURT:** You'll be seeking --

**ATTORNEY RIACH:** -- Mr. --

**THE COURT:** -- a CJA appointment.

**ATTORNEY RIACH:** -- Mr. Sant.

**THE COURT:** All right.

So, Mr. Sant, what -- translated, what seeking CJA appointment means is that the federal defender's office only has a few lawyers. Most of their work is handled by attorneys in private practice who specialize in the defense of federal criminal cases and take cases under contract.

To qualify for what's basically the services of the federal defender's office, that's based on financial necessity.

So would you like me to inquire of you to see whether you qualify for the services of the federal defender?

**DEFENDANT SANT:** Yes, Your Honor. Yes.

**THE COURT:** Okay.

**ATTORNEY RIACH:** Put this --

**THE COURT:** So, Mr. Sant --

**ATTORNEY RIACH:** Let's put this there.

**THE COURT:** -- and -- and you're the first one so other people are sort of going to school on you, so thank you.

Eligibility for the federal defender is based on financial need. That means -- and it's a little uncomfortable, but I'll have to ask you some questions about money, and your answers do need to be under oath. So would you please raise your right hand.

Do you solemnly swear under penalty of perjury that the answers you're going to give to the questions I'm about to ask you will be the truth, the whole truth, and nothing but the truth, so help you God?

**DEFENDANT SANT:** I do.

**THE COURT:** All right. You can put your hand down.

Mr. Sant, are you working just now? Do you have a paycheck coming in?

**DEFENDANT SANT:** Yes.

**THE COURT:** About how much do you make in a average month?

**DEFENDANT SANT:** I'm -- I make about $2,700 in an average

month.

THE COURT: In -- okay. Do you own your own home? Do you rent? Are you staying with friends or family?

DEFENDANT SANT: I rent.

THE COURT: And how much do you pay in rent?

DEFENDANT SANT: $500 a month.

THE COURT: All right. Do you own a vehicle?

DEFENDANT SANT: Yes.

THE COURT: How old is it, and what kind of vehicle is it?

DEFENDANT SANT: It's a 2003 Hyundai Sonata.

THE COURT: And those were good cars. So past-tense. They were good.

Do you have any savings?

DEFENDANT SANT: I have about $400 in a savings account.

THE COURT: All right. You qualify for the services of the federal defender. I'll appoint the office. I'll leave it to the office to work out if Mr. Riach is going to be the attorney. Okay?

All right. Mr. Doyle?

DEFENDANT DOYLE: Yes?

THE COURT: Mr. Doyle, do you have an attorney that you're paying for out of your own pocket?

DEFENDANT DOYLE: No.

THE COURT: Can you afford a lawyer?

DEFENDANT DOYLE: No.

THE COURT: Do you want me to see if you qualify for the services of the federal defender?

DEFENDANT DOYLE: Yes.

THE COURT: Okay. Would you also please raise your right hand so I can ask you -- right hand, sir.

DEFENDANT DOYLE: Oh.

THE COURT: Do you solemnly swear under penalty of perjury that the answers you're going to give to the questions I'm about to ask you will be the truth, the whole truth, and nothing but the truth, so help you God?

DEFENDANT DOYLE: Yes.

THE COURT: Okay. Mr. Doyle, are you working for pay right now? Do you have a paycheck coming in?

DEFENDANT DOYLE: I did, but as of this morning, I suspect I no longer do.

THE COURT: Okay. How much were you -- were you making in an average month?

DEFENDANT DOYLE: I was making $24 an hour as a carpenter.

THE COURT: Were you working 40-hour weeks?

DEFENDANT DOYLE: Not always.

THE COURT: Oh, okay. Do you own a vehicle?

DEFENDANT DOYLE: I own a defunct vehicle that is unsafe to drive, and I am driving a vehicle owned by somebody else.

THE COURT: Okay. Do you own your own home?

DEFENDANT DOYLE: No.

THE COURT: Do you have any savings?

DEFENDANT DOYLE: No.

THE COURT: Okay. I find that you do qualify for the services of the federal defender.

And, Mr. Morrison or Mr. Deates, do you accept the appointment?

ATTORNEY HUDDLESTON: Yes, Your Honor.

UNIDENTIFIED SPEAKER: Can I have that?

THE COURT: Mr. Kennedy?

DEFENDANT KENNEDY: Yes.

THE COURT: Good afternoon. Do you have a lawyer you're paying for yourself?

DEFENDANT KENNEDY: No.

THE COURT: Can you afford a lawyer?

DEFENDANT KENNEDY: Maybe.

THE COURT: All right. Well, we can find out. Do you want me to see if you qualify for the services of the federal defender?

DEFENDANT KENNEDY: Yes.

THE COURT: Okay. Please raise your right hand.

Do you solemnly swear under penalty of perjury that the answers you're going to give to the questions I'm about to ask you will be the truth, the whole truth, and nothing but the truth, so help you God?

DEFENDANT KENNEDY: I do.

**THE COURT:** Okay. Mr. Kennedy, are you working? Do you have a paycheck?

**DEFENDANT KENNEDY:** Yes. I work full-time.

**THE COURT:** Okay. And how much do you make?

**DEFENDANT KENNEDY:** On average, I make 4,000 a month.

**THE COURT:** Okay. Do you own a vehicle?

**DEFENDANT KENNEDY:** I do.

**THE COURT:** Okay. Well, tell me a little more about it.

**DEFENDANT KENNEDY:** The vehicle is a 2004 Mitsubishi Mirage.

**THE COURT:** Okay. And do you own a home? Rent?

**DEFENDANT KENNEDY:** I rent currently.

**THE COURT:** Okay. How much do you pay in rent?

**DEFENDANT KENNEDY:** Rent total is 1350, split with my partner. So after utilities, somewhere around $700.

**THE COURT:** Okay. Any savings?

**DEFENDANT KENNEDY:** No.

**THE COURT:** Okay. Well, looking at the charges in this case, I do find that you qualify for the services of the federal defender.

Mr. Deates, do you accept the appointment?

**ATTORNEY HUDDLESTON:** Yes, Your Honor.

**THE COURT:** Okay.

Mr. Robinet?

**DEFENDANT ROBINET:** Yes.

**THE COURT:** Do you have your own lawyer that you're paying for yourself?

**DEFENDANT ROBINET:** No.

**THE COURT:** Can you afford a lawyer?

**DEFENDANT ROBINET:** No.

**THE COURT:** Do you want me to see if you qualify for the federal defender's office?

**DEFENDANT ROBINET:** Yes.

**THE COURT:** All right. Please raise your right hand.

Do you solemnly swear under penalty of perjury that the answers you're going to give to the questions I'm about to ask you will be the truth, the whole truth, and nothing but the truth, so help you God?

**DEFENDANT ROBINET:** I do.

**THE COURT:** Okay. Mr. Robinet, are you working for pay just now?

**DEFENDANT ROBINET:** I have been unemployed for a few months.

**THE COURT:** Okay. Do you have any savings?

**DEFENDANT ROBINET:** I have approximately $7,000 to my name.

**THE COURT:** Do you own a home?

**DEFENDANT ROBINET:** Yes.

**THE COURT:** Okay. You pau- -- paused a little. Is there...

**DEFENDANT ROBINET:** Well, I -- I -- I'm paying it off. I don't fully own it.

**THE COURT:** Oh, I understand.

**DEFENDANT ROBINET:** With my partner --

**THE COURT:** Okay.

**DEFENDANT ROBINET:** -- yes.

**UNIDENTIFIED SPEAKER:** Mortgage.

**THE COURT:** Well, when --

**DEFENDANT ROBINET:** Mortgage. Thank you.

**THE COURT:** I understand. What do you pay each month?

**DEFENDANT ROBINET:** About 1900.

**THE COURT:** Oh. Any -- I asked you about that. Okay. I find that you do qualify for the services of the federal defender.

Mr. Deates, do you accept this appointment?

**ATTORNEY HUDDLESTON:** Yes, Your Honor.

**THE COURT:** Okay. Thank you.

And, lastly, Mr. Davis?

**DEFENDANT DAVIS:** Yes.

**THE COURT:** Okay. Mr. Davis, do you have your own lawyer that you're paying for with your own money?

**DEFENDANT DAVIS:** Maybe.

**THE COURT:** Okay. That's all right. We can --

**DEFENDANT DAVIS:** Yeah.

**THE COURT:** We'll -- we'll -- we'll check.

**UNIDENTIFIED SPEAKER:** Move this mic.

**DEFENDANT DAVIS:** Hmm.

**THE COURT:** Do you want me to see if you qualify for the services of the federal defender?

**DEFENDANT DAVIS:** Yes, please.

**THE COURT:** Okay. Please raise your right hand.

Do you solemnly swear under penalty of perjury that the answers you're going to give to the questions I'm about to ask will be the truth, the whole truth, nothing but the truth, so help you God?

**DEFENDANT DAVIS:** I do.

**THE COURT:** Okay. Mr. Ro- -- Mr. Davis, are you working for pay just now?

**DEFENDANT DAVIS:** I am.

**THE COURT:** How much are you making?

**DEFENDANT DAVIS:** I make about $6,000 a month.

**THE COURT:** Okay. Do you own your own home? Do you rent?

**DEFENDANT DAVIS:** I own my home.

**THE COURT:** Okay. Are you still making payments on it?

**DEFENDANT DAVIS:** I am.

**THE COURT:** How much each month?

**DEFENDANT DAVIS:** I think I'm making 1850 a month.

**THE COURT:** Okay. Any savings?

**DEFENDANT DAVIS:** I do.

**THE COURT:** How much?

**DEFENDANT DAVIS:** I have, I think, $43,000 in savings. I just received a small inheritance.

**THE COURT:** Okay. What --

**DEFENDANT DAVIS:** Most of that I'm hoping to put into my retirement, but --

**THE COURT:** Un- --

**DEFENDANT DAVIS:** -- I haven't done it yet.

**THE COURT:** Understood. What about a vehicle?

**DEFENDANT DAVIS:** I'd have a 2010 Honda Civic.

**THE COURT:** Okay. All right.

**ATTORNEY KUSHNER:** That's six -- $6,000 --

**THE COURT:** The Indictment in this case is 94 pages long.

**DEFENDANT DAVIS:** I'd just go back to...

**THE COURT:** There's a number of charges here.

**ATTORNEY KUSHNER:** Judge --

**DEFENDANT DAVIS:** Judge, I think I need --

**ATTORNEY KUSHNER:** -- he's --

**DEFENDANT DAVIS:** -- to correct something.

**ATTORNEY KUSHNER:** Yeah.

**THE COURT:** Okay. Go ahead.

**DEFENDANT DAVIS:** I -- I have not been paying very close attention. Things have been auto- -- autopilot for my finances for a while. I think I'm making more money than I said originally.

**THE COURT:** Okay.

DEFENDANT DAVIS: I suspect I'm making more like -- like eight thou- -- $8,000, $9,000 a month.

ATTORNEY KUSHNER: An income divided by --

THE COURT: Okay.

ATTORNEY KUSHNER: -- ten -- ten is the -- 12 times, a month.

DEFENDANT DAVIS: So ten -- let's say $10,000 a month, sir.

THE COURT: Okay. All right.

DEFENDANT DAVIS: I don't think it's that much, but let's say that.

THE COURT: Well, here -- here's -- here's what I'm going to do.

DEFENDANT DAVIS: Yeah.

THE COURT: For today, I'm going to appoint the federal defender. I'm going to ask the federal defender -- they've got -- they -- they will do a more thorough inquiry. It could be that you qualify for their services. It could be that you don't. Could be that you qualify, but you've got to make a contribution. You know --

DEFENDANT DAVIS: I appreciate that.

THE COURT: -- less than full freight, but still something.

DEFENDANT DAVIS: Okay.

THE COURT: But for today, I'm going to go ahead and

appoint the federal defender 'cause I don't want you to go through this hearing without a lawyer. Okay?

**DEFENDANT DAVIS:** Thank you, sir.

**THE COURT:** All right.

Mr. Deates, do you accept the appointment on those terms?

**ATTORNEY HUDDLESTON:** Yes, Your Honor.

**THE COURT:** Okay.

**ATTORNEY HUDDLESTON:** I bel- -- I believe Mr. Kushner is planning to represent Mr. Davis, though, and said this --

**ATTORNEY KUSHNER:** But --

**THE COURT:** But I also understood that Mr. Kushner was seeking CJA appointment.

Did I misunderstand that, Mr. Kushner?

**ATTORNEY KUSHNER:** Yeah, I am seeking CJA appointment, but I am prepared to represent Mr. Davis for this hearing and continue to represent him if -- somehow if we don't get appoint -- get appointed.

**THE COURT:** All right. Well, I've done the financial inquiry so that step's been taken, and we'll figure the next step out after Mr. Davis has a conversation with the federal defender's office. Okay?

All right. I next want to make sure that each of you understands what it is you're charged with. I know that the Indictment in this case is very long. I know that there have been other things, obviously, going on in your day, but I

als- -- I do understand that counsel for the defense may have read the Indictment to you or with you.

So what I'm going to be asking is not whether you agree with what's in the Indictment, not -- I'm not asking anybody to admit to anything. But I do want to know whether you understand what it is that the authorities claim that you did that broke the law.

So, Mr. Sant, have you seen a copy of the Indictment?

**DEFENDANT SANT:** Yes, I have.

**THE COURT:** All right. And do you understand what you're charged with?

**DEFENDANT SANT:** Yes, I do.

**THE COURT:** Okay.

Mr. Davis, do you -- have you seen a copy of the Indictment?

**DEFENDANT DAVIS:** I have.

**THE COURT:** And do you understand what it is you're charged with?

**DEFENDANT DAVIS:** Generally, yes. I --

**THE COURT:** Okay.

**DEFENDANT DAVIS:** I have some --

**THE COURT:** Is --

**DEFENDANT DAVIS:** -- confusion.

**THE COURT:** Is there anything I can help you with?

**DEFENDANT DAVIS:** I understand the general count, the --

the count against us, Count 1. But I look through the Indictment at all the things that included my name, and I seem to be accused of holding meetings.

**THE COURT:** Okay.

**DEFENDANT DAVIS:** And so I'm not sure what the crime -- what crime --

**THE COURT:** Well, that --

**DEFENDANT DAVIS:** -- I'm accused of.

**THE COURT:** -- that's because you're charged in a conspiracy count.

**DEFENDANT DAVIS:** Oh, okay.

**THE COURT:** And, Mr. Kushner, can you help Mr. Davis with that after court?

**ATTORNEY KUSHNER:** Yes. We -- we will discuss it. And I haven't had a chance to go through all 94 pages yet. It's -- but, yeah. So it's probably a little bit of a tall order to expect us to understand everything here yet.

**THE COURT:** That's fine. I'm not -- I'm -- that -- that's why I'm asking the question. All right?

Mr. Kennedy?

**DEFENDANT KENNEDY:** Yes.

**THE COURT:** Have you seen a copy of the Indictment?

**DEFENDANT KENNEDY:** I'm going through it.

**THE COURT:** You're going through it. Okay. Do you have a general idea of what it is they claim you did that was wrong?

DEFENDANT KENNEDY: Felony conspiracy to protest?

THE COURT: Conspiracy?

DEFENDANT KENNEDY: Yeah.

THE COURT: Do you understand --

DEFENDANT KENNEDY: Yeah. And I'm -- I'm a little fuzzy on what exactly's a crime in this, but --

THE COURT: All right.

DEFENDANT KENNEDY: -- I do get the general idea that they're trying to take all of our messages and say that this was a conspiracy.

THE COURT: Okay. All right. Then I think you've got the gist of it.

DEFENDANT KENNEDY: I...

THE COURT: Okay?

UNIDENTIFIED SPEAKER: I don't.

THE COURT: Mr. Robinet?

DEFENDANT ROBINET: Yes.

THE COURT: Yes, you understand what you're charged with or...

DEFENDANT ROBINET: Much similar to Mr. Kennedy, I --

THE COURT: Okay.

DEFENDANT ROBINET: -- have not had a -- a thoroughl [sic] chance to review everything, but I believe --

THE COURT: Sure.

DEFENDANT ROBINET: -- I generally understand that they're

trying to criminalize --

**THE COURT:** Okay.

**DEFENDANT ROBINET:** -- our messaging.

**THE COURT:** Okay.

Mr. Davis I spoke with.

Oh, Mr. Doyle?

**DEFENDANT DOYLE:** I understand the accusations against me. The evidence of them is opaque to me and beyond confusing, but I understand the accusations against me, sir.

**THE COURT:** Understand the accusations. Okay. Thank you.

Let me review with you a couple -- some of your other Constitutional rights. We've talked about your right to an attorney. You also have a right to remain silent. What that means is that you do not have to answer questions from law enforcement. You do not need to make a statement to law enforcement.

If you choose to give up your right, which you can do, and you answer questions or you make a statement, the things you say can be introduced as evidence against you as this case goes forward. If you start answering questions and you decide that that was not a good idea and you want to stop, you can do that.

The fact that you've answered some questions doesn't put you under any obligation, legal, moral, or otherwise, to keep on talking. You do need to be clear with law enforcement, but if you say something like, "I am not going to answer any more

questions," the law is that they do need to stop.

Mr. Sant, do you understand your right to remain silent?

**DEFENDANT SANT:** I do.

**THE COURT:** Mr. Davis?

**DEFENDANT DAVIS:** I do.

**THE COURT:** Mr. Robinet?

**DEFENDANT ROBINET:** I do.

**THE COURT:** Mr. Kennedy?

**DEFENDANT KENNEDY:** I do.

**THE COURT:** Mr. Da- -- or excuse me.

**ATTORNEY HUDDLESTON:** Doyle.

**THE COURT:** Mr. Doyle?

Thank you.

**DEFENDANT DOYLE:** I do.

**THE COURT:** Okay.

Ms. Honeycutt, Mr. Tucker, I'll advise you, pursuant to the Due Process Protections Act, that the United States has an obligation to disclose to these defendants all exculpatory evidence.

Exculpatory evidence is evidence that favors the defense or casts doubt on a case of the United States. This is required by the well-known U.S. Supreme Court case of *Brady versus Maryland* and, at this time, I am ordering the United States to disclose exculpatory evidence. This verbal order will be followed up after this hearing with a written order

saying the same thing.

I caution you that failure to disclose exculpatory evidence in a timely manner may result in consequences including, but not limited to, the exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary actions, or sanctions by the Court.

And, Ms. Honeycutt, I know that you have heard that before. But is there anything about this case in particular that you have questions concerning your *Brady* obligations?

**ATTORNEY HONEYCUTT:** No, Your Honor. We did file a motion with regards to the complex litigation. Outside of that, no, not at all.

**THE COURT:** Okay. I have not seen that motion, so...

**ATTORNEY HONEYCUTT:** I believe --

**THE COURT:** Was it filed today?

**ATTORNEY HONEYCUTT:** It was. And I believe that it went to the magistrate that is assigned to the case.

**THE COURT:** Magistrate Judge --

**ATTORNEY HONEYCUTT:** Yes.

**THE COURT:** -- Schultz?

**ATTORNEY HONEYCUTT:** Yes.

**THE COURT:** All right. Okay. That's fine. All right. Ms. Honeycutt, I understand, secondhand, that you are seeking detention in these matters?

**ATTORNEY HONEYCUTT:** Your Honor, we are seeking detention.

We are seeking detention under 3142(f)(B), in some cases (A). We understand what probation is recommending with regards to all the defendants in front of this Court, and we would also like to ask for alternatives as for condition of release.

**THE COURT:** All right. Knowing that you were going to be making that request, I've reviewed the Bail Reform Act as it applies in these particular cases. I know that you're proceeding under (f)(2). I did not -- I -- my review was limited to the Indictment and the allegations in it.

I did not see flight risk and, of course, the danger under (f)(2) is of a very particular kind, which is danger to -- I'll call it the integrity of the process: threats to jurors, threats to witnesses, et cetera.

Do you have anything on those points?

**ATTORNEY HONEYCUTT:** Yes, Your Honor. It -- as far as (A), the flight risk, that only applies to very specific defendants who have a history of failing to appear.

**THE COURT:** Okay.

**ATTORNEY HONEYCUTT:** As far as (B), that applies to the charges that we have here: Conspiracy -- conspiracy under 372, that is, to impede, intimidate, threats against employees of the United States or officers who are -- from discharging their duties.

And in that case, we have federal officers or federal agents who are witnesses who have -- and in this case, we have

allegations of intimidation and impeding and use of force and obstruction, as well as potential threats, Your Honor.

**THE COURT:** All right. Do those apply to any of this group of five?

**ATTORNEY HONEYCUTT:** They would apply to the entire conspiracy, Your Honor.

**THE COURT:** All right. Would you --

Order. This is not going to be turned into a circus. If there are further outbreaks, the courtroom will be cleared.

Ms. Honeycutt, you said that this would apply to the entire conspiracy. My review of the Indictment, there are allegations of very troubling threats and behavior, but I don't think it noted which defendants were specifically named as being alleged with -- perpetrated that. And I did not see that as to any of these five individuals. Did I miss something?

**ATTORNEY HONEYCUTT:** Your Honor, there have been some -- some allegations that do apply to these defendants in particular as far as the impeding, the obstruction, and the intimidation, yes, Your Honor.

As far as threats, there have been some online statements. And as the Court knows, the Court has read this very thorough Indictment, there is a -- a lot of coordination to put out these threats in a -- as I've said, as a conspiracy.

**THE COURT:** All right. You also mentioned that you had alternative conditions of release in mind. Can you elaborate

on that, please?

ATTORNEY HONEYCUTT: Yes, Your Honor. I realize that probation is recommending no conditions on all defendants, but we do have -- we do have some concerning behavior for the United States. I would ask for the Court to consider an ankle bracelet for at least one to two of the defendants in front of us today at this moment.

I would also ask for -- as an alternative, I would ask for a condition of release to not have communication with other codefendants and to -- if they are going to be protesting on federal property, we're going to ask that they not be actually on federal property and be on state property or what is designated as nonfederal property.

And, in fact, the Federal Protective Services has a very clear delineation, and we would ask that the defendants abide by those.

THE COURT: All right. Let me hear from counsel for the defense, and then I'll come back to you. Thank you, Ms. Honeycutt.

ATTORNEY HONEYCUTT: Uh-huh.

THE COURT: Mr. Riach?

ATTORNEY RIACH: Your Honor, it's not clear to me which of those conditions the Government is seeking with respect to Mr. Sant, if any.

THE COURT: My understanding was that they are seeking

those conditions as to all of the defendants here today. So it would be a ban on communicating with each other, obviously other than through counsel in order to prepare a defense, and it would be no protesting on federal property.

**ATTORNEY RIACH:** And with respect to the ankle bracelet, that was the third condition.

**THE COURT:** I'll have to get more information from Ms. Honeycutt about that.

**ATTORNEY RIACH:** All right.

**THE COURT:** But the request actually is for detention.

**ATTORNEY RIACH:** Would the Court like me to ad- -- address the 3142(g) factors?

**THE COURT:** No. I'd like you to address the Bail Reform Act, 3142(f)(2), which is what Ms. Honeycutt is premising her --

**ATTORNEY RIACH:** Understood. Understood.

**THE COURT:** -- argument on, which requires either a serious risk of flight or a serious risk of threats or intimidation of jurors and witnesses.

**ATTORNEY RIACH:** Understood.

As the probation noted in the pretrial services report, Mr. Sant has one prior conviction from 18 years ago in which he pled guilty to a misdemeanor. There's no history of flight with respect to Mr. Sant, and probation noted that that was not a risk of nonappearance except for the offense conduct charged

and unknown living situation.

As Mr. Sant noted for the Court, he's renting an apartment right now in St. Paul. He's employed. He has a job. And I don't think there's any threat that he's not going to appear for his court appearances.

In terms of the danger to the system that the Court, I think, appropriately noted, that that particular prong of the statute relates to interfering with jurors, interfering with witnesses, interfering with the court process, obvious --

THE COURT: By extension, would threats to law enforcement support a supposition that that would lead to threats to witnesses and jurors?

ATTORNEY RIACH: I -- hypothetically, is there a universe where there could be allegations that could -- could get you there? Perhaps. But that's definitely not the case with Mr. Sant.

In reviewing the Indictment, my -- my review revealed that most of the allegations relate to articles that Mr. Sant wrote online cataloging and -- and things that he had seen during Operation Metro Surge, that he's alleged to have participated in -- in two blockades where this -- where our street was blocked off.

I didn't see anything in there related to any threats of violence to any of -- anyone, let alone any threats to a federal law enforcement. So I don't think there's any

allegations in the Indictment that would even get us close to that point.

I'm not familiar enough with the case law to be able to answer that from a legal perspective, but I think that -- given all the circumstances around Mr. Sant's Indictment and his personal characteristics, I think it's highly unlikely that that would pose any kind of problem. We definitely haven't gotten to the threshold we need to meet for that prong of the statute.

**THE COURT:** All right. Thank you.

Mr. Kushner?

**ATTORNEY RIACH:** (Unintelligible whispering.)

**THE COURT:** Go ahead.

**ATTORNEY KUSHNER:** So you want me to address just those specific --

**THE COURT:** I -- I -- well --

**ATTORNEY KUSHNER:** -- provisions in (f)?

**THE COURT:** -- Ms. Honeycutt has --

**ATTORNEY KUSHNER:** Yeah.

**THE COURT:** -- given her argument.

**ATTORNEY KUSHNER:** Yeah.

**THE COURT:** And I'm going to go around --

**ATTORNEY KUSHNER:** So --

**THE COURT:** -- the table and ask --

**ATTORNEY KUSHNER:** So then --

THE COURT: -- counsel to respond.

ATTORNEY KUSHNER: So there -- there isn't -- there isn't any basis for detention under (f)(1) or (f)(2). There's nothing in there indicating that Mr. Davis would have any reason to flee.

He's lived in Minnesota for a very long time. He has a full-time job. He's a professor at Macalester College. He has two adult children who live with him. He's got family ties. Has no criminal history whatsoever, so no -- no opportunity for any record for nonappearance. So the fleeing isn't there.

There also isn't any -- any -- any -- anything -- any allegation or evidence presented to indicate that Mr. Davis would represent any kind of threat to any -- any witness or alleged victim or potential juror of any sort. Again, he's got no criminal history of any sort. What he's accused of in the Indictment is holding a meeting and talking about political action.

He's been indicted for being involved in political organizing in the resistance to the federal invasion of Minnesota back in January, which is --

THE COURT: Well, Mr. Kushner --

ATTORNEY KUSHNER: -- common among the --

THE COURT: -- he's been indicted for being a member of a group that has made threats against law enforcement and that's starting to have actually perpetrated assaults --

ATTORNEY KUSHNER: Well --

THE COURT: -- on law enforcement.

ATTORNEY KUSHNER: Well, I mean, I haven't --

THE COURT: Not him personally --

ATTORNEY KUSHNER: Yeah.

THE COURT: -- but you know the law of conspiracy.

ATTORNEY KUSHNER: Well, but there hasn't been any -- I mean, I -- I think the -- I mean, I -- I think we -- we've got to -- I think it's important to read the Indictment with a -- with an -- with some critical thinking here because there isn't any allegation that anyone committed any violence against law enforcement.

This was an effort to keep people from -- being in the community from being kidnapped by ICE. And there's all -- there are -- well, the -- there -- the -- there -- the public record is replete with all kinds of, frankly, atro- -- I think the abuses and even atrocities by these federal officers against the city, citizens of Minnesota, or people who --

THE COURT: Mr. --

ATTORNEY KUSHNER: -- reside in Minnesota.

THE COURT: -- Kushner?

ATTORNEY KUSHNER: Yeah.

THE COURT: As I said earlier, we're not going --

ATTORNEY KUSHNER: Yeah.

THE COURT: -- to turn this into a spectacle.

You have a precise, somewhat technical, legal question before you --

ATTORNEY KUSHNER: Yeah.

THE COURT: -- about the applicability of Title 18, United States Code, Section 3142(f)(2), and I'd appreciate hearing something about that.

ATTORNEY KUSHNER: And I'm -- and I'm prepared to address it, but I would respectfully suggest that the -- we also have to look at this in a larger context. The Government has issued a politically motivated Indictment against these people for being active --

THE COURT: Mr. Kushner, why don't you sit back down. And when you're ready to make a legal --

ATTORNEY KUSHNER: I'm --

THE COURT: -- argument, I'll be happy to hear from you.

ATTORNEY KUSHNER: I'm ready. I'm ready to make a le- --

THE COURT: You're a good lawyer. We've had lots of dealings in the past. I know that you can do it.

ATTORNEY KUSHNER: I -- I'm ready to make a legal argument.

THE COURT: Please do.

ATTORNEY KUSHNER: That was part of my legal argument, but yeah. There's -- there's nothing -- as Mr. Davis himself has duly pointed out, he's accused of participating in meetings, you know, that -- that involved, you know, nonviolent

resistance, and that's all he's been involved in. And the so-called Operation Metro Surge is over.

There's no allegation that there's been any kind of activity since the federal agents rev- -- withdrew from Minnesota back in early February. We're now in June. He -- he doesn't even know who these -- who these supposed people are. There wasn't anyone specific who was targeted in any of these allegations. It was the -- you know, the target was people who were going and arresting people suspected of immigration violations.

Mr. Davis, as I said, has a completely clear record. He can follow any instructions to not have any contact with witnesses in the case. We'll have to deal with the issue about contact with codefendants. I'll assume that'll come later.

But there isn't anything in there -- in anything in the allegations that suggest that he would somehow interfere with the process going forward, that he's not capable of abiding by any Court direction to not have contact. He doesn't -- I don't think he has -- he has no intention of trying to find -- certainly not prospective jurors, and no intention of trying to find witnesses or communicating with witnesses.

And so given -- given his -- his strong ties to the community and his clear, clean record and that he's a respected person in the community, there isn't any grounds to conclude that he's going to present a threat to any witness in the case

going forward.

**THE COURT:** Thank you.

Mr. Deates or Mr. Morrison?

**ATTORNEY MORRISON:** Mr. Huddleston will make the argument.

**THE COURT:** Oh, sir, I'm sorry.

Mr. Huddleston?

**ATTORNEY HUDDLESTON:** Thank you, Your Honor. We do not believe that the Government has made the preliminary showing necessary under 3142(f)(2)(A) or (f)(2)(B). (f)(2)(A) requires showing of a serious risk of flight. I -- we've not seen that. Going one by one through the three folks that I represent today.

For Mr. Doyle, there's no indication that he's any sort of risk of flight. With regard to the pretrial services report, there we see that he has appeared repeatedly for court. And where there are failures to appear, that is for snow emergency parking, winter season parking bans, and other traffic offenses. So that is not -- we don't believe that's enough to show a serious risk of flight in a felony federal case or to suggest that he would be a serious risk of flight in this context.

Then, additionally, with regard to Mr. Kennedy in terms of serious risk of flight, there we also don't believe the Government has made the necessary showing. Like Mr. Doyle, he's also a resident of Minnesota. And there is a -- what

appears to be a single failure to appear in his record, but consistently appearing for court appearances in less significant court cases, and so we don't believe that he's a serious risk of flight in this felony context either.

And then, lastly, Mr. Robinet is not a serious risk of flight as a Minnesota resident and someone who has only four traffic citations. There's no evidence of serious risk of flight there either.

And then with regard to 3142(f)(2)(B) and a serious risk of obstruction or serious risk to the system, here nobody -- the charge itself -- the conspiracy that's been charged, 37 -- 18, U.S.C., 372, is not a -- an offense that necessarily qualifies under (f)(1), which I just think is relevant to how the Court should consider the idea of the charge itself indicating serious risk of obstruction. Additionally, the --

**THE COURT:** Could you run that point by me one more time, please?

**ATTORNEY HUDDLESTON:** Oh, yes, Your Honor. So under (f)(1), we see the Congressional decision that there are specific offenses, essentially, in -- under which people pose a either -- essentially, a serious risk based on the offense conduct itself, that there should be a detention hearing. And so I think that the fact that 18, U.S.C., 372 is not listed in (f)(1) does mean that the Court should not put as much weight on the idea of the charge itself reflecting a serious risk of

obstruction here.

But outside of that, Your Honor, we also don't see a serious risk of obstruction with regard to Mr. Doyle, Mr. Kennedy, or Mr. Robinet. There's no history of obstruction charges or anything like that in their background, and they are gentlemen who are members of the community, carpenters, things like that. And there's -- this is not a case where there's been a showing of a serious risk of obstruction under (f) -- 3142(f)(2)(B).

**THE COURT:** All right. Thank you, Mr. Huddleston.

**ATTORNEY MORRISON:** You -- Your -- Your Honor?

**THE COURT:** Mr. Morrison?

**ATTORNEY MORRISON:** No, Your Honor. Thank you.

**THE COURT:** Ms. Honeycutt, rebuttal?

**ATTORNEY HONEYCUTT:** Yes, Your Honor. May I approach the podium?

**THE COURT:** Of course.

**ATTORNEY HONEYCUTT:** Your Honor, earlier I asked if the Court would accept exhibits. I do understand that that is an unusual request for an initial appearance. I do believe pictures are going to be very helpful for this Court to decide if we have met our threshold for a detention hearing, and I understand that that is exactly what we're arguing.

And I also gave all the defense copies of the exhibit, as well as e-mailed a color copy to the Court as well as the

federal public defenders and known defense attorneys at that time.

May I approach with the exhibits?

**THE COURT:** I've got them.

**ATTORNEY HONEYCUTT:** All right.

**THE COURT:** Unless there's been a change to what you e-mailed.

**ATTORNEY HONEYCUTT:** There -- there has been no change. It is Government's Exhibit 1 through 20.

**THE COURT:** All right.

Any objections from the defense to the receipt of Government's 1 through 20, for purposes of this hearing?

**ATTORNEY HUDDLESTON:** Yes, Your Honor. We would object to the introduction of the exhibit as a whole. We have not been privy to any sort of background relating to it and have not had any chance to inter- -- investigate any of the posts and things like that that are included.

**THE COURT:** All right.

**ATTORNEY KUSHNER:** I would also -- did you -- oh.

I'd also object based on lack of foundation. And I understand the looser rules at this preliminary stage, but we have no information about the context in these photographs, what they -- where they came from and what they're supposed to portray in most cases.

**THE COURT:** Mr. Riach?

**ATTORNEY RIACH:** We'd join the objections.

**THE COURT:** All right.

The objections are noted and, with respect, they are overruled. This is a prel- -- an initial appearance, and there is no jury. I think that I am able to evaluate these exhibits and give them the weight that they deserve.

Ms. Honeycutt?

**ATTORNEY HONEYCUTT:** Thank you, Your Honor. And, first, a large portion of this is -- all of it is laid out in the Indictment. I'm going to say it in a more concise manner, obviously, because we are here for quite a few defendants. Government Exhibit 1 is a compilation of what occurred on January 23rd at the Whipple Building.

January 23rd, we have a conspiracy to commit very specific blockades for the roads that surround the Whipple Building. There was -- there were two soft blockades at two entrances to the build- -- to the road that goes around Whipple, which is in a C shape.

And then we had a flipped trailer that was specifically flipped for this purpose set out in the only other exit route for that area. And, in fact, there'll be -- there's a picture of the flipped trailer in this compilation, and it's noted "flipped trailer," as well as the soft blockade that blocked an entire entrance for the road as well as the second soft blockade for the road.

Now, the gentlemen that are here today -- the defendants that are here today are actually the organizers for this hard and soft blockade. And, in fact, the date -- the Indictment goes into detail about all of the communication that we have to show that conspiracy, to include Mr. Sant at the U-Haul renting the U-Haul as well as Mr. Kennedy purchasing one of those trailers online, and that -- that trailer was found. It had crea- -- it had been in an accident.

And that trailer was going to be used for another blockade; however, they got into an accident prior to that.

THE COURT: Okay. Ms. Honeycutt --

ATTORNEY HONEYCUTT: But the --

THE COURT: -- let me in- --

ATTORNEY HONEYCUTT: Yep.

THE COURT: -- interject at this point.

ATTORNEY HONEYCUTT: Uh-huh.

THE COURT: When I went through these photographs before coming to court -- you e-mailed them to me --

ATTORNEY HONEYCUTT: Yeah.

THE COURT: -- before court began -- is it safe to say that under 18, U.S.C., 3142(f)(2)(B), the obstruction prong, that your argument is, look, these are individuals who there's evidence interfered with federal functions; therefore, we may surmise that they pose a serious risk of interfering with another federal function, specifically the functioning of the

Court by interfering with jurors and witnesses?

Is that a fair encapsulation of your argument for detention?

ATTORNEY HONEYCUTT: Yes, Your Honor, I do think that that is partly fair. The other part of the argument is that our witnesses are emp- -- are federal law enforcement and the federal law enforcement officers who have already been impeded upon and intimidated and obstructed.

THE COURT: All right. All right. You certainly, you know, argue the -- your case the way --

ATTORNEY HONEYCUTT: Sure.

THE COURT: -- you think is best.

I'm not sure that you need to go through all 20 --

ATTORNEY HONEYCUTT: Okay.

THE COURT: -- exhibits, but take that for what it's worth.

ATTORNEY HONEYCUTT: Understood, Your Honor. Then I would ask the Court to accept the exhibits and put it into the record. There are very clear depictions of the blockades. They -- 1 through -- if I just may summarize for the record, 1 through 5 are for January 23rd. And then we have Exhibits 6 through 9, where we also have the Czech hedgehogs on -- on Exhibit 9, go for January -- sorry, March 1st of 2026.

UNIDENTIFIED SPEAKER: Czech hedgehog.

ATTORNEY HONEYCUTT: And then the other exhibits are part

and parcel of the conspiracy, showing the ev- -- affiliation to the Direct Action Networks as well as Antifa, which is also in the Indictment, Your Honor, so I would rest on the Indictment with regards to that. And then we have some of the other statements that have been made as part of this conspiracy.

THE COURT: All right.

ATTORNEY HONEYCUTT: If I may ask the Court to accept that into the record?

THE COURT: Yes.

ATTORNEY HONEYCUTT: Thank you.

THE COURT: Exhibits 1 through, and including, 20 are accepted, but they are accepted for purposes of today's hearing only.

ATTORNEY HONEYCUTT: Your Honor, I -- I can go through every act that we have already -- that we have in our Indictment. I know the Court has read it, so I'm going to rest on the Indictment. I think that's been very clear. And, again, I know that the Court has read it, so...

THE COURT: Okay. Thank you.

ATTORNEY HONEYCUTT: Thank you.

THE COURT: All right.

Here's the ruling of the -- my ruling as far as detention goes.

ATTORNEY HONEYCUTT: He wasn't -- (unintelligible whispering) -- so...

**THE COURT:** First of all, a little bit of background. Under the Bail Reform Act, the Supreme Court has said in a case called *United States versus Salerno*, S-a-l-e-r-n-o, that a person can be detained before trial only under very limited circumstances.

And the really pertinent part of the Supreme Court's *Salerno* decision is that it says that detention cannot be grant -- cannot be ordered unless it is first preceded by a hearing. And that hearing has to have a lot of procedural safeguards built in: Ability to cross-examine witnesses; ability to be assisted by an attorney; ability to call witnesses of one's own. All of those sorts of things.

And what Congress has done is rather than say, "Here are the crimes for which detention is authorized," they have said, "Here are the crimes for which a hearing is authorized."

And, of course, if there is no hearing, then under the *Salerno* decision, there can be no detention. So at the Bail Reform Act, and that's what we've been talking about so far this afternoon, Title 18, United States Code, Section 3142(f), begins by laying out certain broad categories of offenses, such as offenses involving firearms, for which a hearing is authorized.

And then there are the two provisions that we've been talking about this afternoon. The first of which is that the person poses a serious risk of flight. And I do not find that

any of these defendants pose such a risk.

Secondly, there is a serious risk that a defendant will interfere with the process. That is to say the person will try and intimidate jurors; the person will try and frighten witnesses. The argument of the prosecution is that because prosecution witnesses are federal law enforcement and because there have been allegations, which I do take seriously, of intimidation -- and contrary to what Mr. Kushner said, there is in the Indictment an allegation that a vehicle was deliberately crashed and that injury resulted -- but I'm invited to then expand that to say that because that happened, there will also be threats against witnesses and jurors. And that is a step I will not take. So what I am finding is that the preconditions of the Bail Reform Act for a hearing on detention have not been met. Because they have not been met, there will not be hearings. Because there will not be hearings, there will not be detention.

Ms. Honeycutt, you are, of course, free to appeal that to the District Court Judge assigned. I believe it's Judge Menendez.

I do, though, having had an opportunity to review the entire record, find that the additional conditions requested by the prosecution are sound.

Number one, if there's going to be protests and you're charged in this case, those protests cannot be on federal

property.

Number two, there cannot be contact with other defendants except through the attorneys for purposes of preparing a defense in this case.

I will also add a specific word. I've heard from the marshal service that there are people on the plaza outside the courthouse who are demonstrating. It's their right to demonstrate, but they're on federal property and you may not join them. If you do, you're violating your conditions of release. Okay?

Any questions?

Mr. Riach, you look like you've got something on your mind.

**ATTORNEY RIACH:** Your Honor, may I be heard briefly on the no-contact condition?

**THE COURT:** Please?

**ATTORNEY RIACH:** And the issue that we face with Mr. Sant is that he and Mr. Robinet are roommates.

**THE COURT:** I'm sorry; I didn't hear you.

**ATTORNEY RIACH:** Mr. Sant and Mr. Robinet are roommates.

**THE COURT:** Oh.

**ATTORNEY RIACH:** So I would ask that Mr. Sant be excused from that condition with respect to Mr. Robinet.

**UNIDENTIFIED SPEAKER:** That applies to the rest of them.

**THE COURT:** They'll -- Mr. Sant will be ex- -- and Mr.

Robinet will be excused from that condition, but not from the other condition.

**ATTORNEY RIACH:** That's correct, Your Honor.

**THE COURT:** Okay.

Mr. Kushner?

**ATTORNEY KUSHNER:** A couple of -- of questions here. On the -- so on the no protests on federal property, let's say they -- a client leaves the courthouse and there's a protest going on, what are they --

**THE COURT:** Keep on walking.

**ATTORNEY KUSHNER:** And then that it's only on federal property; right?

**THE COURT:** I said protesting on federal property.

**ATTORNEY KUSHNER:** Oh, okay. How about a press conference on federal property?

**THE COURT:** No.

**ATTORNEY KUSHNER:** So that would be considered by the Court to be a protest?

**THE COURT:** That would be considered to be on federal property, and what I'm doing is I am stopping activities related to this case on federal property.

**ATTORNEY KUSHNER:** Okay.

**THE COURT:** And if you want -- if you keep on asking questions, the condition will probably keep on expanding.

**ATTORNEY KUSHNER:** Okay. All right. And then the --

the -- okay. The question here -- the question here, though, about the no contact with codefendants except through attorneys, it's anticipated that we might have meetings involving both the attorneys and the codefendants. Would that be permissible?

**THE COURT:** Well, you've got to defend the case as you see fit, but what I do not want -- what I am not allowing is for defendants to be speaking with each other. If they're in a meeting and the lawyers are talking and they're talking through the lawyers, that's fine.

**ATTORNEY KUSHNER:** Okay.

**THE COURT:** Mr. Huddleston?

**ATTORNEY HUDDLESTON:** Your Honor, we would just briefly object that we don't believe that the condition with regard to no contact with codefendants is necessary in this case and that under the Bail Reform Act, that the requirement under 3142(c) is the least restrictive conditions necessary. And then I'd also just note that Mr. Robinet would need to be excused for the purpose -- purposes --

**THE COURT:** But I already did.

**ATTORNEY RIACH:** Correct.

**THE COURT:** I already did.

All right. Objection is noted, but overruled.

All right. Anything else for this afternoon from anyone?

Ms. Honeycutt?

ATTORNEY HONEYCUTT: Yes, Your Honor. I just wanted a little clarification with regards to Mr. Sant and Mr. Robinet. They are only excused within their communication with each other as roommates, but not specifically --

THE COURT: Well --

ATTORNEY HONEYCUTT: -- with anyone else.

THE COURT: -- you know, there's a workability component to this.

ATTORNEY HONEYCUTT: Right.

THE COURT: We're not going to check on every conversation. They're roommates. They're going to talk. There's -- there's just a pragmatic limitation --

ATTORNEY HONEYCUTT: Sure.

THE COURT: -- there.

ATTORNEY HONEYCUTT: I just wanted to make sure that that doesn't exclude the other codefendants, that they cannot communicate --

THE COURT: Mr. Robinet and Mr. Sant are in this -- under the same roof. They're going to talk to each other, and I'm not going to forbid that.

ATTORNEY HONEYCUTT: Sure.

THE COURT: I can't. Right. Okay.

ATTORNEY HONEYCUTT: Thank you.

THE COURT: All right.

We're going to now -- you all -- you five are going to be

excused once I have signed off on the release paperwork, which probation will get to me. That might take, you know, a few minutes and -- but in the meantime, I'm going to step off.

Another group of defendants is going to come in. I understand that some people are here specifically to show support for one or the other of these five. I'd ask you to consider, if you're such a person, giving up your seat to someone who's doing a similar thing for the next group that comes in. Okay?

All right. I will step off now, and we'll resume when ready. Thank you.

**THE DEPUTY COURT CLERK:** All rise.

*(Off the record at 3:12 p.m.)*

* * * * *

C E R T I F I C A T E

WHILE NOT PRESENT TO STENOGRAPHICALLY REPORT THE FOREGOING PROCEEDINGS, I CERTIFY THAT IT WAS TRANSCRIBED TO THE BEST OF MY ABILITY FROM A DIGITAL AUDIO RECORDING. I FURTHER CERTIFY THAT I HAVE NO INTEREST IN THE PROCEEDINGS.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 25TH DAY OF JUNE 2026.

CERTIFIED: *s/Leslie K. Ruiz*
Leslie K. Ruiz
United States Court Reporter
300 South Fourth Street, Suite 375
Minneapolis, MN 55415
(612) 664-5106
leslie_ruiz@mnd.uscourts.gov