UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-cr-115(5) (KMM/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S MOTION FOR** |
| vs. | ) | **AMENDMENT OF CONDITION** |
| | ) | **OF RELEASE** |
| ERICK DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Erik Davis, through undersigned counsel, pursuant to 18 U.S.C. § 3145(a), hereby moves the Court for an Order amending his conditions of release to delete the restriction that he not have contact directly or indirectly with any Co-Defendants listed in the Indictment. (Order Setting Conditions of Release, Doc. 37, Page 2, 7(g)).[1] Mr. Davis asserts his right to *de novo* review of this condition. United States v. Maull, 773 F.2d 1479, 1481-822, 1484 (8th Cir. 1985). The Bail Reform Act provides that the Court must impose the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The condition prohibiting contact with co-defendants is not a necessary condition to assure Mr. Davis' appearance as required to the

---

[1]  The Magistrate Judge also stated at the hearing that Mr. Davis and Co-Defendants were not to participate in protests on federal property. (6/16/2026 Tr. Doc. 131 at 44:24-45:1, 45:5-9). Mr. Davis would have contested such a condition as an unjustified violation of his First Amendment rights to free speech and assembly. However, since such a provision was not ultimately included in the written order setting conditions of release that he and the Magistrate Judge signed, the defense does not understand this to be a condition of release.

safety of any other person or the community. Further the condition places an undue burdens on Mr. Davis and violates his constitutional rights.

There was no suggestion that the challenged condition was necessary to prevent any risk of flight. The Magistrate Judge stated at the hearing addressing the detention of Mr. Davis and four other co-defendants, "I do not find that an of these defendants pose such a risk [of flight]." (6/16/26 Tr., Doc. 131 at 43:24-44:1). The restriction similarly is unnecessary to protect the community because Mr. Davis poses no risk the community. Mr. Davis has no prior criminal history and therefore no history of any failure to appear in Court and no indication that he poses any danger of committing any sort of illegal activity. (Pretrial Services Report at 3). He has very strong ties to the community, having lived in Minnesota for 20 years, currently lives with his two young adult children and domestic partner, and has been employed a professor at Macalaster College since 2007. (Id. at 1-2). Indeed, Mr. Davis has every incentive to remain law abiding and conduct himself property in order to preserve his reputation and career.

The Magistrate Judge did not specifically state why he believed that no contact with co-defendants was a necessary condition. The government appeared to argue that based on the charge of conspiracy to impede a federal officer,[2] There was no showing as to how Mr. Davis with no prior criminal record or co-defendants with minimal if any

---

[2] The full charge is conspiracy to impede or injure a federal officer, but there is no allegation in the 94 page Indictment that any defendant made any agreement or plan to injure a federal officer.

criminal records would be likely to engage in any criminal conspiracy or other illegal activity when now having to defend themselves against federal felony charges. The Magistrate Judge, in denying the government's request for a detention hearing, stated that based on the most serious allegation in the Indictment involving the crashing of a vehicle, "I'm invited to then expand that to say that because that happened, there will also be threats against witnesses and jurors. And that is a step I will not take." (Doc. 131 at 44:5-13). There is no basis for concluding that Mr. Davis and his co-defendants present any risk to the community by speaking with each other.

It is important to note that not only do Mr. Davis and his Co-Defendants lack any prior history indicating danger to the community, but also the alleged offense and conspiracy itself does not evince a desire to cause harm, and certainly harm of the sort common in most criminal offenses. The alleged conduct was not in any way economically motivated as in most alleged criminal conspiracies, which may incentive continued criminal activity. Critically, it is clear that the alleged conduct consisted of non-violent resistance which was intended to protect the community from harm being caused by a massive campaign of violent federal repression against the community.  The federal government's large scale violations of constitutional and human rights are well documented by authoritative human rights organizations and this Court. See e.g. Human Rights Watch, "A Manufactured Crisis" Minnesota Communities Terrorized by the Federal Government, 2026,

www.hrw.org/sites/default/files/media_2026/06/us_minneapolis0626%20web_0.pdf ;

Minnesota v. Noem, 818 F. Supp. 3d 1030 (D. Minn. 2026); Tincher v. Noem, 816 F.

Supp. 3d 931 (D. Minn. 2026); Hussen v. Noem, Case No. 0:26-cv-00324, 2026 U.S.

Dist. LEXIS 47700 (D. Minn., filed March 9, 2026). As Human Rights Watch's summary

explained, " The Trump administration's deployment of thousands of federal immigration

agents to Minnesota between December 2025 and March 2026 led to widespread human

rights violations, terrorized residents with long-lasting effects, and spotlighted the deeply

abusive patterns in US immigration

enforcement."www.hrw.org/news/2026/06/18/us-federal-government-terrorized-minnesot

a-communities. The Court found in a civil lawsuit challenging the federal government's

actions:

> Plaintiffs have made a strong showing that Operation Metro Surge has had,
> and will likely continue to have, profound and even heartbreaking,
> consequences on the State of Minnesota, the Twin Cities, and Minnesotans.
> Since Operation Metro Surge began, there have been multiple shootings of
> Minnesota residents by federal immigration enforcement agents.
> Additionally, there is evidence that ICE and CBP agents have engaged in
> racial profiling, excessive use of force, and other harmful actions.

Minnesota v. Noem, 818 F.Supp.3d at 1048.

When evaluating the necessity for any restrictions on Mr. Davis' and his Co-

Defendants' freedom while on release, it is appropriate for the Court to consider the

context of the case which arises from well-documented abuse and repression by the

federal government. This case should be recognized as the federal government's extension

of its repressive conduct from invasive and brutal actions in the community to weaponization of the legal system against those who dissent. While the government is expending massive effort and resources to prosecute Mr. Davis and his Co-Defendants and many dozens of other people in this district for non-violent resistance, it has brought zero criminal charges against any federal officers or agents who have engaged in abusive conduct that has been well documented. This includes no charges against federal agents who are shown on clearly on video shooting and killing without justification Alex Pretti and Renee Good. See A Manufactured Crisis at 57-62. This includes no charges against and ICE officer who shot Julio Cesar Sosa-Celis in the leg without justification and then clearly made up a story that Sosa-Celis and a co-defendant has violently assaulted the officer. Id. at 63-65; United States v. Aljorna and Cesar Solis, Case No. 26-mj-23 (PAM/DLM), Doc.48 (D. Minn. 2/11/2026 (government moves to dismiss charges with prejudice,  recognizing "Newly discovered evidence in this matter is materially inconsistent with the allegations in the Complaint Affidavit . . . as well as the preliminary-hearing testimony.")  The public record including prior cases before the Court compel recognition that this prosecution may well not be based on legitimate law enforcement and pursuit of justice, but part of the government's repressive political goals. In such a context, restrictions on Defendants' freedom should be evaluated with more caution than in a typical case.

Mr. Davis does not challenge the restriction that he not have contact with alleged victims and witnesses in the case (provided that the government provides the required No Contact List). He challenges the prohibition on speaking with co-defendants because of the hardship it imposes. Several of the co-defendants are among Mr. Davis' best friends. They frequently socialize, and rely on each other for emotional support and advice when dealing with problems in their personal lives. Mr. Davis' relationship with his friends is particularly important to him since his wife passed way from cancer in 2021. (Pretrial Services Report at 1). The prohibition on contact with co-defendants thereby imposes an hurtful, unfair and unnecessary burden. The prohibition also unnecessarily interferes with Mr. Davis's recognized constitutionally protect right of "freedom of association" based on the recognition that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 617-618 (1984).

The prohibition on contact with co-defendants also unduly impairs the ability of Mr. Davis and his co-defendants to adequately prepare their legal defenses. Mr. Davis is highly educated and intelligent, and will accordingly be participating and assisting the preparation of his defense. Contact among Co-Defendants is necessary to protect their Sixth Amendment right to effectively participate in their defense and have effective assistance of counsel.

Contact among the Co-Defendants is necessary in order to adequately prepare a defense to what the government contends is such an extraordinarily complex case that a continuance of at least 90 days is necessary for all deadlines. (Doc. 22). The government has stated:

> Discovery is voluminous and complex, totaling over 20 TB (terabytes) of information as of the date of this filing, with more expected imminently. It includes over 44,000 pages of written reports and photographs, as well as approximately 2.5 TB of surveillance and body camera videos, 15 TB of messages exchanged by the defendants via the Signal application, and other content obtained through search warrants.

(Doc. 22 at 4).

Mr. Davis and his counsel will not be able to fully master the discovery on their own, but will also need to rely on co-defendants and their counsel to help sort through the discovery. It will be necessary for Mr. Davis to communicate with his Co-Defendants in his case in order to make sure that they are aware of all of the pertinent information, and can share each other's knowledge of evidence that contradicts or places in a different context the allegations in the Indictment and the voluminous discovery. It will be necessary for Mr. Davis and his Co-Defendants to meet together with their attorneys in order to plan and prepare a defense. Counsel in this case have agreed on the need ot work together due to the scope and complexity of the case and the many common issues, have begun to collaborate on motions and responses to the government's positions, and have determined that it will be necessary to have meetings and possibly other group

communications involving counsel and their client's together[3].  Further since the attorneys will not have sufficient time to meet with each other and the Defendants to go over all of the extremely voluminous discovery, it will also be necessary for the Defendants to meet with each other on their own to discuss the evidence.

## CONCLUSION

The condition of release prohibiting Mr. Davis and Co-Defendants from having any contact with each other is unnecessary, personally burdensome, and seriously impedes the ability to prepare a defense. Mr. Davis respectfully requests that this

---

[3] The Magistrate Judge had orally added an exception that Defendants could have contact "through the attorneys for purposes of preparing a defense in this case." (DOc. 131 at 45:2-4). Undersigned counsel attempted to clarify the scope of this exception with the Magistrate Judge at the initial hearing:

> [KUSHNER] The question here -- the question here, though, about the no contact with codefendants except through attorneys, it's anticipated that we might have meetings involving both the attorneys and the codefendants. Would that be permissible?
> THE COURT: Well, you've got to defend the case as you see fit, but what I do not want -- what I am not allowing is for defendants to be speaking with each other. If they're in a meeting and the lawyers are talking and they're talking through the lawyers, that's fine.

Doc. 131 at 47:1-10). Undersigned counsel interprets this statement to authorize group meetings with attorneys and clients, but there is a lack of clarity about what is meant by clients having to "talk through lawyers." The written order setting conditions of release also does not document this exception. In the event that the Court does not entirely remove the prohibition on contact with Co-Defendants, Mr. Davis respectfully requests that the district court at least issue an order making clear that joint meetings or electronic coummications with Defendants and their attorneys participating are permitted.

condition be stricken.

Dated:  July 1, 2026                                      LAW OFFICE OF JORDAN S. KUSHNER

                                                         By s/Jordan S. Kushner
                                                         Jordan S. Kushner, ID 219307
                                                         Attorney for Defendant
                                                         431 South 7th Street, Suite 2446
                                                         Minneapolis, Minnesota  55415
                                                         (612) 288-0545
                                                         jskushner@gmail.com