UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 26-CR-115 (KMM/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

v.

NATASHA RAKOTZ

and

DOUGLAS MISTEREK,

Defendants.

**DEFENDANTS RAKOTZ AND MISTEREK'S JOINT MOTION FOR AMENDMENT OF THE CONDITIONS OF RELEASE**

Defendants Natasha Rakotz and Douglas Misterek, by and through undersigned counsel and pursuant to 18 U.S.C. § 3145(a)(2), hereby move the Court for an Order amending their conditions of release. The two requested amendments are: the deletion of the restriction prohibiting direct and indirect contact between Codefendants listed in the Indictment, and the deletion of the restriction on otherwise lawful First Amendment activity on federal property. (Order Setting Conditions of Release as to Natasha Rakotz, Doc. 101, Page 2, 7(g) and Page 4, 7(u); Order Setting Conditions of Release as to Douglas Misterek, Doc. 99, Page 2, 7(g) and Page 4, 7(u)). These conditions are not necessary to ensure Ms. Rakotz's or Mr. Misterek's court appearances or to ensure the safety of others, but restrict a substantial amount of otherwise lawful conduct protected under the First and Sixth Amendments.

## STANDARD OF LAW

Conditions of release set by a magistrate at the initial hearing are reviewed *de novo* by the district court upon a motion for amendment of the conditions of release. *United States v. Maull*, 773 F.2d 1479, 1481-822 (8th Cir. 1985). The Bail Reform Act provides that the Court must impose the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). This Court may therefore review *de novo* whether the imposed conditions constitute the least restrictive means that will reasonably assure Ms. Rakotz's and Mr. Misterek's future court appearances and the safety of others.

## ARGUMENT

The conditions of release that prohibit all contact with Codefendants and protest activity on federal property are unnecessary to further the twin aims of the Bail Reform Act: attendance in Court and the safety of others. No facts or allegations have been offered to indicate that Ms. Rakotz or Mr. Misterek are a flight risk. Nor do any of the 196 pages of the indictment reference a single injury sustained by any federal officer or any member of the public, let alone are facts alleged that identify any future safety concerns that a no contact order or a federal protest ban could address. Instead, these conditions unduly burden Ms. Rakotz and Mr. Misterek by impeding their preparation of this case and by restricting otherwise lawful expressive speech or conduct. Without serving a clear purpose, these conditions impede Ms. Rakotz's and Mr. Misterek's constitutional rights under the First and Sixth Amendments to the U.S. Constitution.

**1. Neither of the Challenged Conditions of Release Relate to Identifiable Flight Risk or Safety Concerns.**

The purpose of imposing conditions on a defendant's pretrial release is twofold: to ensure that the defendant attends future court appearances and to mitigate safety concerns to others. 18 U.S.C. § 3142(c)(1)(B). Here, the allegations in the Indictment and facts put forth by the Government fail to indicate that Ms. Rakotz and Mr. Misterek present a flight risk or safety concerns.

The Magistrate Judge, upon reviewing the Government's 20 exhibits at a bail hearing for the first five Codefendants to argue this issue, noted that flight risk did not appear to be a concern for this group. (6/16/26 Tr., Doc. 131 at 43:24-44:1) ("I do not find that any of these defendants pose such a risk [of flight]." Absent any identifiable risk that Ms. Rakotz or Mr. Misterek would flee or fail to show up for Court, neither condition can be justified as necessary to address a nonexistent flight risk.

Nor could either condition be imposed to address concerns of the safety of the community. While the Government's logic when seeking conditions of release was that the charge of conspiracy to injure or impede a federal officer inherently means that the Defendants had injurious intent, there is not a single allegation in the 194-page indictment that Ms. Rakotz or Mr. Misterek conspired or made any sort of agreement or plan to injure a federal officer. The Indictment generally alleges that Co-Defendants conspired to prevent noncitizens from being taken into immigration custody, but not that Co-Defendants conspired to do so with the intent that anyone sustain any injuries.

None of the Co-Defendants appear to have any history of posing a danger to other people. There is not a single allegation in the entire indictment even that any Co-Defendant acted out of selfishness or a desire for personal gain. Nor is there a single allegation in the Indictment that any officer or other member of the public actually sustained any injuries whatsoever as a result of Ms. Rakotz's or Mr. Misterek's or any other Co-Defendant's conduct. If the intent of this alleged conspiracy was to cause injure or harm others, it would have been a wholly unsuccessful endeavor.

Without any identified risk that Ms. Rakotz and Mr. Misterek might flee, and without allegations that anyone was injured by the alleged conspiracy or any of the Co-Defendants, or that Ms. Rakotz or Mr. Misterek intended or currently intend for any injury to occur, the challenged conditions have no legitimate purposes to serve under the Bail Reform Act.

**2. The Condition Prohibiting Contact Between Co-Defendants Needlessly Infringes Upon Co-Defendants' Sixth Amendment Rights.**

The Orders of Release state that each Defendant must "avoid all contact, directly or indirectly, with any person who is or may be a victim or a witness in the investigation or prosecution, including: Codefendants listed in the Indictment." *E.g.* Doc. 101, Page 2. 7(g). The no contact provision between Co-Defendants threatens Ms. Rakotz's and Mr. Misterek's Sixth Amendment rights to prepare a meaningful defense, but does not serve a legitimate legal purpose.

At Arraignments on July 1, 2026, counsel for the Co-Defendants were encouraged to appoint defense attorneys as spokespeople for several pretrial matters, such as

discovery disclosures and a proposed protective order. This process is efficient and fair to the Co-Defendants so long as whichever Co-Defendants whose attorneys are *not* the spokespeople for that particular topic have a meaningful opportunity to discuss the spokesperson's position and to authorize the spokesperson to make representations to the Government on certain issues. Co-Defendants are, at least to some extent, therefore *expected* to strategize together and come to some agreement on pretrial issues. An order prohibiting the Co-Defendants from any form of contact with each other, when their attorneys are expected to coordinate, interferes with the Co-Defendants' ability to ensure that they understand and are consenting to the decisions that their attorneys are making and delegating surrounding key pretrial matters.

The purpose of the No Contact condition is to prevent a defendant from intimidating or otherwise tampering with a prospective witness's testimony. 18 U.S.C. § 3142(c)(1)(B)(v). For Ms. Rakotz, as with her Co-Defendants, it is unlikely that Co-Defendant testimony will be a key evidentiary component of the Government's case, since the allegations in the Indictment appear to be captured significantly in text and Signal messages and by several terabytes of audio and video recording. (Doc. 22 at 4). None of the Co-Defendants appear to be a witness to the singular allegation specific to Ms. Rakotz that pertains to her actual physical conduct. (Doc. 1 ¶260). The remainder of the allegations against Ms. Rakotz are simply the contents of Signal Chat messages. (*Id.* at ¶¶ 212-13, 216, 218, 220, 226, 240, 241, 244, 261-2). Testimony regarding the fixed content of a text message would be implausible to tamper with.

Contact among the Co-Defendants is necessary given the massive amount of discovery in this case. (Doc. 22 at 4, referencing 20 terabytes of information). Ms. Rakotz and Mr. Misterek and their respective counsel will not be able to fully master the discovery on their own, but will also need to rely on Co-defendants and their counsel to help sort through the discovery. It will be necessary for Ms. Rakotz and Mr. Misterek to communicate with each other and their Co-Defendants in order to make sure that they are aware of all of the pertinent information, and can share each other's knowledge of evidence that contradicts or places in a different context the allegations in the Indictment and the voluminous discovery.

This is especially true given that approximately fifteen terabytes of discovery is anticipated to be Signal chats. Signal usernames change frequently and are often random and unrelated to a person's legal name. Sorting through fifteen terabytes of Signal Chats that not every Co-Defendant was in, with people who not every Co-Defendant will know by the handle they are using at that time, will inherently require Co-Defendants to pool their knowledge and recollection and to be allowed to review and discuss the discovery together. Otherwise, statements in Signal Chats cannot be meaningfully attributed to the legal identities of the potential witnesses' against the Co-Defendants. In this way, a no contact provision interferes with the Co-Defendants' Sixth Amendment rights to confront witnesses.

Additionally, standard conditions of release already prohibit the Co-Defendants from committing further crimes, *e.g.* Doc. 101, Page 1, 1, which would include witness tampering or having any other form of unlawful contact. The only additional

communication that the no contact provision covers is otherwise entirely lawful and either constitutionally protected or socially beneficial–communication related to reviewing discovery, supporting one another emotionally, and assisting one another in understanding and engaging in the court process that for many of them is entirely new.

Ms. Rakotz and Mr. Misterek are by no means challenging the condition that they avoid contact with alleged victims or any other witnesses in the case, once those witnesses are identified by the Government. They are instead challenging the prohibition on speaking with Co-Defendants because of the hardship it imposes to them as they attempt to prepare for their case.

### 3. The Condition Prohibiting Protesting on Federal Property Violates Ms. Rakotz's and Mr. Misterek's First Amendment Rights

Ms. Rakotz and Mr. Misterek are the only two Co-Defendants whose written conditions of release contain a prohibition on protesting on federal property.[1] (Doc. 99 and Doc. 101, Page 4, 7(u)). Including this condition only on Ms. Rakotz's and Mr. Misterek's Orders of Release is arbitrary and unnecessary, given the absence of significant distinguishing facts. Further, because of existing conditions of release prohibiting either of them from committing any criminal offenses, this condition only

[1] At the bail hearing on June 16, 2026 for Ms. Rakotz and Mr. Misterek's Co-Defendants, a prohibition on protesting on federal property was pronounced orally on every Co-Defendant's conditions of release. (6/16/2026 Tr. Doc. 131 at 44:24-45:1, 45:5-9). However, only on Ms. Rakotz's and Mr. Misterek's Orders of Release is that condition imposed in writing. Ms. Rakotz and Mr. Misterek believe that in fairness the Co-Defendants' Conditions of Release should all be the same, but believe for the enumerated reasons that this is properly achieved by eliminating the prohibition against protesting on federal property from their Orders, **not** by adding it to their Co-Defendants'.

serves to restrict them from engaging in what would otherwise be lawful behavior deserving of the utmost protection under the First Amendment.

A plaza in front of a federal courthouse is a quintessential location for protests, press releases, and civic gatherings, yet Co-Defendants cannot under this condition pause and converse with members of the public attending their court appearances who gather in the plaza in front of the Courthouse, nor pause to comment (or decline to comment) to members of the press conferencing before or after their court appearances. Restrictions against expressive speech or conduct on traditional public forums, meaning "government property traditionally open to the public for expressive speech," must survive strict scrutiny. *United States v. Kokinda*, 497 U.S. 720, 726, 110 S. Ct. 3115, 3119, 111 L. Ed. 2d 571 (1990) ("Regulation of speech activity on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny.") "Strict scrutiny—which requires a restriction to be the least restrictive means of achieving a compelling governmental interest—is "the most demanding test known to constitutional law.'" *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 484 (2025) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997)).

Here, the compelling Government interest is hard to discern. Ms. Rakotz and Mr. Misterek are not accused of having been on federal property at any point during the conspiracy. If the Co-Defendants had already been subject to a restriction prohibiting them from protesting on federal property throughout the six month span of the indictment, this prohibition would not have altered their activities. Nor would a blanket ban on protesting on federal property be the least restrictive means, when the

unchallenged, standard condition of release preventing the commission of subsequent criminal activity precisely targets that which the Government has a compelling interest in preventing–the commission of crimes.

## CONCLUSION

The Condition of Release prohibiting Ms. Rakotz and Mr. Misterek from having contact with each other and their CoDefendants is unnecessary, burdensome, and impedes their ability to prepare a defense, and the prohibition on protesting lawfully on federal property infringes their First Amendment rights. Ms. Rakotz and Mr. Misterek respectfully request that conditions 7(g) and 7(u) be stricken, or in the alternative that 7(g) be amended to clarify that Co-Defendants are to be permitted incidental social contact, and to discuss their case in the presence of their attorneys. Attorney Sommer Lindsay Honeycutt has been consulted on this Motion, and objects.

Date: July 1, 2026

/s/ Kira A. Kelley
Kira A. Kelley, Esq. (MN: 402932)
CLIMATE DEFENSE PROJECT
P.O. Box 7040
Minneapolis, MN 55407
kira@climatedefenseproject.org
(802) 683-4086
*Attorney for Natasha Rakotz (15)*

/s/ Wyatt Arneson
Wyatt Arneson
400 South 4th Street

Suite 1025
Minneapolis, MN 55415
MN #0392071
612-746-1188
wyatt@arnesonlawllc.com
*Attorney for Douglas Misterek (12)*