UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 26-CR-CR-115 (KMM/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TREASURE CAY THORESON (9),<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MOTION FOR AMENDMENT OF CONDITIONS OF RELEASE** |

Treasure Cay Thoreson, by counsel Bruce D. Nestor of De León & Nestor, LLC, states as follows for her Motion for Amendment of Conditions of Release:

INTRODUCTION

This Motion is filed pursuant to 18 USC §3145(a)(2), seeking to amend and strike the condition of release established at Ms. Thoreson's initial appearance on June 16, 2026, that she "avoid all contact, directly or indirectly, with… co-defendants listed in the Indictment." (ECF#50, p.2).[1] The District Court should conduct a *de novo* review of Ms. Thoreson's conditions of release. *United States v. Maull*, 773 F.2d 1479, 1481-82 (8th Cir. 1985).

[1] This same release condition bars contact "with any person who is or may be a victim or witness in the investigation or prosecution." Ms. Thoreson does not seek to amend this portion of the release condition. She would note that the Court also ordered the Government "to provide a No Contact List to the defendant and defense counsel" which the Government has not yet done. Absent such a list, Ms. Thoreson does not have any knowledge of who may constitute a "victim or witness" and is unable to comply with this condition until the Government provides such a list.

The Bail Reform Act provides that the Court should release a defendant on a personal recognizance or unsecured appearance bond with the conditions that they not commit a Federal, State, or local crime and that they submit a DNA sample. 18 USC §3142(b). Only if such release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community" must the Court consider imposing additional conditions. In that case, the Court must order the release of the defendant with the "least restrictive" additional conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 USC §3142(c)(1).

Ms. Thoreson contends that the complete restriction on contact with co-defendants violates the Bail Reform Act because it is not a necessary condition to reasonably assure her appearance as required and the safety of others and the community. Further, such a restriction deprives Ms. Thoreson of the right to engage in acts of speech and association protected by the First Amendment and interferes with her ability to prepare a defense in violation of her rights under the Fifth and Sixth Amendment.

## FACTUAL BACKGROUND

At the time of her initial appearance, a Bond Report had not yet been prepared for Ms. Thoreson. That report has now been prepared and filed with the Court. (ECF# 140). The Report finds that Ms. Thoreson is 39 years old, has resided in Minnesota for the past fifteen years after moving from South Dakota,

owns her own home, has a master's degree from St. Thomas University, and is employed full-time as a special education teacher. She has no criminal conviction history and a single arrest on March 1, 2026, for Disorderly Conduct, which was dismissed by the Hennepin County District Court on April 21, 2026.[2]

Ms. Thoreson is charged with conspiracy "to prevent by force, intimidation, and threats, [federal agents] from discharging their duties of their officers (sic), in violation of Title 18 United States Code, Section 372." (ECF#1, p.3). There is no factual allegation in the ninety-four page Indictment, which lists 260 alleged overt acts, that Ms. Thoreson had any direct contact (verbal or physical) with any federal agent or that Ms. Thoreson uttered a verbal statement that could constitute a threat or was intended to intimidate a federal agent. There is no factual allegation in the Indictment that Ms. Thoreson ever specifically endorsed or agreed with any co-conspirator to use force, threats or intimidation to impede federal agents.[3] The Indictment does not allege that any individual, much less a federal agent, was injured as a result of the allegations in Count I of the Indictment.

---

[2] This charge appears to be related to the blockade of a street in unincorporated Hennepin County, and not on federal property, on March 1, 2026, and described in the Indictment. (ECF#1, ¶ 177-204). The nature of the charge, and subsequent dismissal, reflects the assessment of state law enforcement and prosecution authorities regarding the nature of Ms. Thoreson's conduct on that date.

[3] For purposes of §372, "[a]n act involves "force" if it threatens or results in violence or if it threatens or results in harming or destroying property or harming or killing people." Final Jury Instructions, *United States v. Forral, et. al.,* 25-CR-111(RLP), ECF#161, p. 21 (Eastern District of Washington) (5/27/26).

The Indictment alleges that Ms. Thoreson was a member or associate of Direct Action Minnesota (DAMN) and other groups such as the Black Cat Worker Collective (BCWC). The Indictment does not allege that mere membership or association with either DAMN or BCWC is itself illegal. The Indictment, in fact, describes activities of each group which are undoubtedly legal and constitutionally protected: support for militant class struggle, community self-defense, digital campaigning, and community organizing. (ECF#1, p.3-4). By proffer, and by evidentiary submission at any hearing on this Motion, Ms. Thorenson would establish that these organizations also engage in activities such as fundraising for abortion access, workplace and union organizing, and mutual aid to provide economic and social support to community members. Ms. Thoreson, and many if not all of her charged co-defendants, have engaged in this constitutionally protected associational activity together for many years.

## ARGUMENT

Based on the above facts, including Ms. Thoreson's personal characteristics and the nature and circumstances of the offense charged, Ms. Thoreson should be released on an unsecured appearance bond, without any additional conditions, pursuant to 18 USC §3142(b). There is nothing in the record to support a finding that such release would not be sufficient to assure the appearance of Ms. Thorenson as required or would endanger the safety of any other person or the community. Absent such a determination, supported by factual findings, release under 18 USC §3142(b) is required.

If the Court determines that additional conditions are required to be imposed pursuant to 18 USC §3142(c), those conditions may only be imposed to the degree that they are the “least restrictive conditions” necessary to reasonably assure the appearance of Ms. Thoreson as required and the safety of any other person or the community. Thus, while a restriction on “personal association” may be ordered, §3142(c)(1)(B)(iv), such a restriction may not be imposed to achieve some purpose other than Ms. Sorenson’s appearance as required or the safety of other persons or the community.

Restricting Ms. Thorenson’s right to communicate with her co-defendants does not have any logical relationship to assuring her appearance at future proceedings as required and there is nothing to indicate that Ms. Thorenson poses any risk of flight. The restriction on contact with co-defendants can not be justifies as necessary to assure her appearance as required.

While no evidence in the record would support such a determination in this case, a restriction on co-conspirators having contact with each other could potentially be justified as a condition necessary to ensure the safety of others or the community to be protected from continuing criminal activity. Such a determination, however, would not be justified in this particular case. The Indictment simply does not allege any criminal activity after March 1, 2026, other than expressive and associational activity of engaging in speaking tours, publishing articles, and publicly observing and documenting the behavior of law enforcement as engaged in by thousands, if not tens of thousands, of other

Minnesotans since December of 2025. The Indictment does not allege that Ms. Thorenson herself engaged in any activity related to the charged conduct after March 2, 2026 (ECF#1, p.66). There simply is no basis to make a determination that a ban on contact with co-defendants is required to prevent future criminal activity by Ms. Thorenson.

Ms. Thoreson also contends that the restriction on contact with co-defendants infringes on her rights to free speech and association under the First Amendment. By charging Ms. Thorenson, and then seeking such a condition of release, the Government effectively prevents Ms. Thorenson and others from engaging in the political, social, and community organizing activity in which they have engaged in over many years. This is of particular concern in light of the substantial evidence that Ms. Thorenson is subject to prosecution based on the political agenda and viewpoint discrimination of the Department of Justice and executive branch. The Indictment specifically seeks to link Ms. Thoreson with an entity labeled "AntiFa"[4] which in turn links this prosecution to National Security Presidential Memorandum-7, issued September 25, 2025, and which called for the targeting and prosecution of persons expressing views characterized as involving "anti-Americanism, anti-Capitalism, and anti-Christianity." The propensity of this Department of Justice to misuse the legal system for political purposes is also well established. As noted by the Chief Judge for the United States District Court of Minnesota Patrick Schiltz, in an order quashing subpoenas issued by the federal

---

[4] Short for "Anti-Fascist."

government to Governor Tim Walz, Attorney General Keith Ellison, and the mayors of Minneapolis and St. Paul, "the subpoenas were issued as part of an unconstitutional effort to coerce Minnesota officials into assisting the federal government with enforcing civil immigration laws and to harass and retaliate against them for failing to do so."[5] In granting a preliminary injunction in *Tincher v. Noem*, United States District Court Judge Katherine Menendez found substantial evidence to conclude that federal agents had been engaged in a pattern of retaliation against peaceful protest activity, had arrested or detained persons in retaliation for their protected conduct without probable cause that they had committed a crime, used pepper-spray and non-lethal munitions on peaceful protesters, and stopped and detained persons in their vehicles without reasonable suspicion.[6] Further, it is particularly ironic that Ms. Thorenson faces prosecution in this matter by an Administration which has pardoned convicted criminals who rioted at the United States Capitol on January 6, 2021 – and actually injured and impeded federal officers – but had the good fortune to share the political views of the Administration.

While Ms. Thorenson may potentially be punished if the Government proves by proof beyond a reasonable doubt at trial that she agreed with others to commit illegal acts, she should not be punished at this time – as a person presumed

---

[5] *In Re Grand Jury Subpoenas,* 26-mc-43(PJS), District of Minnesota, Order, 6/22/2026, p.14.

[6] *Tincher v. Noem*, 25-cv-4669(KMM/DTS), District of Minnesota, Order, 1/16/2026.

innocent, unless and until proven guilty – by restricting her association with others and her ability to carry out the activities of DAMN and BCWC which are undoubtedly legal and constitutionally protected.

Ms. Thorenson also contends that the restriction on contact with her co-defendants interferes with her right to prepare a defense:

> A criminal defendant "has a constitutional right 'to conduct his own defense.'" *United States v. Smith*, 830 F.3d 803, 808 (8th Cir. 2016), *quoting Faretta v. California*, 422 U.S. 806, 836, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Conducting a defense necessitates adequate time and resources to prepare for trial. *See Kansas v. Ventris*, 556 U.S. 586, 590, 129 S. Ct. 1841, 173 L. Ed. 2d 801 (2009) ("[T]he opportunity . . . to prepare a defense for trial" with one's attorney is "the core" of the Sixth Amendment right to counsel."). Denying a self-represented criminal defendant the ability to prepare for trial can effectively abrogate his constitutional right to self-representation. *See Powell v. Alabama*, 287 U.S. 45, 59, 53 S. Ct. 55, 77 L. Ed. 158 (1932) ("It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case."

United States v. Ladeaux, 61 F.4th 582, 586 n.4 (8th Cir. 2023)

The allegations in the Indictment refer to attending meetings, with tens or hundreds of people, as "overt acts." They describe events occurring over a period of months in what was a highly charged, traumatic atmosphere for many Minnesotans as they watched federal agents kill two of their neighbors, unlawfully shoot others, and detain and disappear thousands of community residents. Individual memory is not absolute. Ms. Thoreson and her co-defendants have the right to meet and collectively discuss the truth of the Government's allegations – to help each other recall and answer questions such as: Who was at that meeting ?

What was said ? What is the Government leaving out? These conversations are critical to Ms. Thorenson's ability to effectively participate in the preparation of her defense and to have effective assistance of counsel. Channeling these conversations exclusively through counsel would be impossible given the number of defendants and attorneys and the breadth and nature of the Government's allegations.

Ms. Thoreson also adopts by reference the arguments of her co-defendant Erick Davis in Defendant's Motion for Amendment of Condition of Release (ECF#150), co-defendant Emmett Doyle in Defendant's Motion for Amendment of Condition of Release (ECF#152), and co-defendants Natasha Rakotz and Douglas Misterek in Defendants Rakotz and Misterek's Joint Motion for Amendment of the Conditions of Release (ECF#160), in support of her Motion for Amendment of Conditions of Release.

## CONCLUSION

WHEREFORE, Treasure Cay Thoreson requests that District Court amend the existing conditions of release by striking the limitation on her ability to communicate with her co-defendants as set forth in Additional Condition of Release 7(g) of ECF #50.

Date: July 2, 2026

S/BRUCE D. NESTOR
Bruce D. Nestor, 0318024 – MN
DE LEÓN & NESTOR, LLC
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
(612) 436-3664 – Facsimile
nestor@denestlaw.com

ATTORNEY FOR TREASURE THORENSON