UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

vs.

Nathan Junho Kim (10) "Nat Kim",

Defendant.

Civil File No. 26-cr-115

**MOTION FOR AMENDMENT OF CONDITIONS OF RELEASE**

## INTRODUCTION

Defendant Nat Kim[1] respectfully asks the Court to modify its Order Setting Conditions of Release, ECF No. 57 (the "Order") to permit her to contact or communicate with her co-defendants (the "no-contact condition"). Far from the least restrictive condition necessary to ensure Kim's appearance at trial and the safety of the community, the no-contact condition imposes significant hardship on Kim's ability to prepare for trial, while serving no apparent benefit. Accordingly, the Court should modify Kim's conditions of release to permit her to communicate with her co-defendants to prepare a defense and to participate in community programs. In the alternative, the Court should permit Kim to have incidental contact with co-defendants while engaged in ordinary activities, but prohibit Kim from discussing the case directly with her co-defendants.

[1] The Defendant uses female pronouns and uses the name "Nat Kim."

## BACKGROUND

### I. Kim Is Heavily Involved in the Minneapolis Community

Kim is an artist in the Twin Cities and is heavily involved in her community. Kim has lived in Minneapolis for approximately six years. Kim recently worked as a shop instructor at the University of Minnesota teaching students how to engage in material fabrication. Kim has worked for a variety of art institutions around the Twin Cities over the past six years. In addition to her work, Kim is also involved in a variety of community organizations, including serving on the conduct committee for the 501(c)(3) non-profit organization Southside Battletrain, which is "a group of South Minneapolis artists, welders, engineers, builders, neighbors, cooks, and creators who collaborate to create interactive art spectacles for and by the community." *See* Southside Battletrain, https://www.southsidebattletrain.com/. Southside Battletrain is known for its May Day Parade in South Minneapolis, and other events throughout the year including Art-a-Whirl, and the Surley Brewing Darkness Day event. Kim is also an active volunteer with Chicago Avenue Fire Arts Center, a 501(c)(3) non-profit arts organization that focuses on art forms produced using heat, blacksmithing, metal casting, sculptural welding, and other techniques. *See* https://www.cafac.org/.

In addition to volunteering, Kim also works for Twin Cities Maker as a shop instructor. Twin Cities Maker is a 501(c)(3) non-profit organization offering a dedicated working space for artists, engineers, and makers, along with various instruction and classes. *See* https://tcmaker.org/.

## II. Operation Metro Surge

As this Court is well aware, in the late winter of 2025 and early 2026, the federal government initiated "Operation Metro Surge," which saw thousands of federal agents arrive in Minneapolis and Saint Paul. The results of Operation Metro Surge were disastrous for the community. As this Court noted in a recent case addressing the Operation:

> Plaintiffs have made a strong showing that Operation Metro Surge has had, and will likely continue to have, profound and even heartbreaking, consequences on the State of Minnesota, the Twin Cities, and Minnesotans. Since Operation Metro Surge began, there have been multiple shootings of Minnesota residents by federal immigration enforcement agents. Additionally, there is evidence that ICE and CBP agents have engaged in racial profiling, excessive use of force, and other harmful actions. And Defendants do nothing to refute the negative impacts described by Plaintiffs in almost every arena of daily life, from the expenditure of vast resources in police overtime to a plummeting of students' attendance in schools, from a delay in responding to emergency calls to extreme hardship for small businesses. It would be difficult to overstate the effect this operation is having on the citizens of Minnesota, and the Court must acknowledge that reality here.

*Minnesota v. Noem*, 818 F. Supp. 3d 1030, 1048 (D. Minn. 2026) (Menendez, J.); *see also In re Grand Jury Subpoenas,* No. 26-MC-43 PJS, 2026 WL 1783899, at *2 (D. Minn. June 22, 2026) (Schiltz, C.J.) ("The surge was the largest civil immigration enforcement operation in DHS history, despite the fact that the percentage of Minnesota's population consisting of undocumented immigrants is estimated to be less than half the national average. During the surge, there were widespread reports of DHS agents engaging in abusive and dangerous tactics seemingly designed to escalate tensions and

destabilize the community. Also during the surge, two American citizens — Renee Good and Alex Pretti—were killed by DHS agents…"). Thousands of people protested Operation Metro Surge. *See* "Thousands Rally Against ICE in Minneapolis in Below-Zero Temperatures," Matt Lavietes and Nicole Acevedo, NBC News, https://www.nbcnews.com/news/us-news/ice-out-rally-minneapolis-immigration-protest-rcna255631.

## III. The Indictment and Conditions of Release

On June 11, 2026, the government procured an indictment alleging Kim and 14 other co-defendants conspired to impede a federal officer in violation of 18 U.S.C. § 372. *See* ECF No. 1 (the "Indictment").[2] Among other things, the government claims Kim attended meetings, commented on a White House press release, offered to share a Go Fund Me page, and helped unload some metal objects from a truck. Indictment ¶¶ 40, 80, 98, 132, 134, 166, 198-99. The Indictment makes no allegations that Kim harmed or threatened to harm another, let alone a federal officer.

On June 16, 2026, the Court issued an Order Setting Conditions of Release in which the Court released Kim prior to trial subject to several conditions. Among other things, the Court ordered Kim to remain law abiding, cooperate with the collection of a DNA sample, attend court, and to "avoid all contact, directly or indirectly, with any

[2] Section 372 proscribes conspiring to threaten, injure, or impede a federal officer engaged in the lawful discharge of his duties. The Indictment does not allege that the defendants conspired to threaten or injure anyone. The Indictment also alleges other defendants violated other laws, but the only allegations as to Kim is the alleged violation of 18 U.S.C. § 372.

person who is or may be a victim or witness in the investigation or prosecution, including: Codefendants listed in the Indictment." Order at 7(g).

During Kim's initial appearance, the government did not offer any evidence or other basis for its request that the defendants be ordered not to have contact with each other. *See* ECF No. 132 at 9:25-26:23.

## ARGUMENT

Where, as here, the defendant is released prior to trial, the Bail Reform Act requires the Court to impose the "'least restrictive' conditions that 'will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . .'" *Moreland v. United States*, 968 F.2d 655, 659 (8th Cir. 1992) (citing 18 U.S.C. § 3142(c)(1)(B)). A district court applies a de novo review to requests seeking to modify conditions of release. *United States v. Maull*, 773 F.2d 1479, 1481-82 (8th Cir. 1985). In assessing whether the conditions imposed are the "least restrictive," courts consider: (1) "the nature and circumstances of the offense charged"; (2) the weight of the evidence against the person: (3) the history and characteristics of the person" including the person's connection to the community, criminal record, and whether the person was at the time of the alleged offense on probation or parole; and (4) the nature and seriousness of the danger to any person in the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Some courts have also applied heightened scrutiny to conditions for release that burden fundamental constitutional rights, as the no-contact condition burden's Kim's First Amendment right to freely associate with others. *See, e.g.*, *United States v. Wendt*, 650 F. Supp. 3d 672, 683 (S.D. Iowa 2023); *United*

*States v. Martinez*, 4:21-cr-00107-SMR-HCA, 2021 U.S. Dist. LEXIS 179162, 2021 WL 4169789, at *2 (S.D. Iowa Sept. 13, 2021) (applying heightened scrutiny to pretrial release conditions that result in sweeping restrictions on constitutional rights). Here, amending the Order to permit Kim to communicate with her co-defendants would result in the least restrictive combination of conditions, while still ensuring Kim's presence at trial and the protection of the community.

## I. The Allegations Against Kim Do Not Support the No-Contact Condition

The first two factors under Section 3142(g)—the allegations against Kim and evidence against her—do not support the no-contact condition here. Count I of the Indictment alleges that Kim and others conspired to impede federal law enforcement. Critically, the Indictment does not allege that any defendant conspired to harm another. As to Kim specifically, the allegations allege that she attended meetings, offered to share a Go Fund Me page, commented on a White House press release, and unloaded some metal objects from a truck. Indictment ¶¶ 40, 80, 98, 132, 134, 166, 198-99. In addition, though the alleged "overt acts" continue through June 6, 2026, none of the conduct after at least March 1, 2026, is even plausibly criminal. *See* Indictment ¶¶ 206-269 (alleging the defendants organized meetings; organized a martial arts class; logging publicly available information about ICE vehicles; presenting at a speaking tour; commented on a White House press release; among other non-criminal conduct).

## II. Kim's History and Characteristics Do Not Support the No-Contact Condition

Kim has no criminal history. Kim has lived in the community for approximately six years. Pretrial services assessed a minimal risk of nonappearance.

## III. Kim Does Not Pose a Risk of Non-Appearance and the No Contact Provision Does Not Have Any Bearing on Any Risk of Flight.

When Kim learned of the allegations made against them, she voluntarily surrendered and appeared for her initial appearance. Kim has not missed a court date and communicating with her co-defendants has no bearing on Kim's likelihood of continued appearance at court proceedings.

## IV. Kim Poses No Danger to the Community and the No-Contact Condition Does Not Provide Additional Security

The no-contact condition is not necessary to prevent any danger to the community. As detailed in the Senate Judiciary Committee's Report on the Comprehensive Crime Control Act of 1983 (which adopted the Bail Reform Act of 1983), courts should impose a no-contact restriction under Section 3142(c)(1)(B)(v) "whenever the circumstances are such that the judge believes any form of victim or witness intimidation may occur." S. Rep. No. 225, 98th Cong., 1st Sess., 3, 14-15 (1983); *United States v. Delker*, 757 F.2d 1390, 1401 (3d Cir. 1985) (recognizing the legislative purpose behind this condition). The government has not identified any reason to think the defendants would seek to intimidate anyone based on contact with each other.

Further, as this Court has previously determined, Operation Metro Surge has concluded. *Tincher v. Noem*, 2026 U.S. Dist. LEXIS 45871, at *9 n.3 (D. Minn. Mar. 5, 2026) ("Were there a dispute, the Court would have no trouble finding that OMS is over."). The Indictment's allegations reflect this—including only benign allegations after at least March 2. As is clear from the Indictment, any alleged conduct occurred in response to the drastic increase of federal immigration officials in Minnesota, the

drawdown of those same officials means there is no risk of similar alleged conduct in the future. There is no basis to believe that the defendant's continued contact with one another would result in any similar "danger" as that alleged in the Indictment because the factual predicates underlying the alleged conspiracy have subsided.

## V. The No-Contact Condition Should Be Modified to Permit the Defendant to Have Contact with Any Co-Defendant in Connection with Work or Volunteering Activities

If the Court is not inclined to lift the no-contact condition altogether, Kim respectfully request that the Court permit her to have incidental contact with co-defendants while engaged in her work, volunteering, and other ad hoc community activities in the community. As noted above, Kim is involved in several community organizations, including Southside Battletrain, Chicago Avenue Fire Arts Center, and Twin Cities Maker. Other defendants are also involved with those organizations or may use their services.

For example, co-defendants Douglas Misterek and Alec Stewart have volunteered with Southside Battletrain. Misterek also volunteers for Chicago Avenue Fire Arts Center. The no-contact condition has already caused logistical headaches for the organizations, which have had to create separate email threads with Kim and Misterek and adjust schedules to ensure they do not inadvertently violate the no-contact condition by merely replying to an email or showing up at the same volunteer opportunity. The no-contact condition also creates a risk for Kim with her position at Twin Cities Maker—Kim does not control who uses the space, and the no-contact condition creates a risk of an unintentional violation if a co-defendant were to work on an art project at the facility.

The no-contact condition has even meant that in some instances, Kim has had to forego volunteer opportunities with these organizations out of fear that she may unintentionally violate a condition of her release. Given that any contact would be incidental to Kim's role in the organizations, she respectfully requests that the Court add an exception to her conditions for release permitting contact while volunteering for Southside Battletrain or Chicago Avenue Fire Arts Center, or while working for Twin Cities Maker.

## CONCLUSION

For all the foregoing reasons, Kim respectfully requests that the Court Modify her conditions of release by striking the limitation on her ability to communicate with her co-defendants as described in Section 7(g) of the Court's Order Setting Conditions of Release, ECF No. 57.

Dated: July 10, 2026

DORSEY & WHITNEY LLP

By *<u>/s/ Ian Blodger</u>*

Surya Saxena (#0339465)
saxena.surya@dorsey.com
Michael Rowe (#0392598)
rowe.michael@dorsey.com
Ian Blodger (#0398254)
blodger.ian@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Attorneys for Defendant Nat Kim