UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 26-CR-115 (KMM/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TREASURE CAY THORESON (9),<br><br>Defendant. | **MOTION FOR AMENDMENT OF CONDITIONS OF RELEASE and APPEAL OF SETTING OF RELEASE CONDITIONS** |

Treasure Cay Thoreson, by counsel Bruce D. Nestor of De León & Nestor, LLC, states as follows for her Motion for Amendment of Conditions of Release and Appeal of Setting of Release Conditions:

## PROCEDURAL HISTORY

Treasure Thoreson had an initial appearance in this matter on June 16, 2026, before Magistrate Judge John Docherty. The Government moved for a detention hearing under 18 USC §3142(f)(2), which was denied by the Court. The Magistrate Judge released Thoreson on a personal recognizance bond and set conditions of release to include that she "avoid all contact, directly or indirectly, with… co-defendants listed in the Indictment." (ECF#50, p.2).[1]

[1] This same release condition barred contact "with any person who is or may be a victim or witness in the investigation or prosecution." Ms. Thoreson has not sought to amend or appeal this portion of the release condition. She would note that the Court also ordered the Government "to provide a No Contact List to the defendant and defense counsel" which the Government has not yet done. Absent such a list, Ms. Thoreson does not have any knowledge of who may constitute a "victim or witness" and is unable to comply with this condition until the Government provides such a list.

On July 2, 2026, Thoreson filed a Motion to Modify Conditions of Release (ECF# 171) which was opposed by the Government in a filing of July 13, 2026 (ECF# 176). Thoreson's Motion to Modify Conditions of Release was filed pursuant to 18 USC §3145(a)(2) and requested that the District Court conduct a *de novo* review of Thoreson's conditions of release as authorized by *United States v. Maull*, 773 F.2d 1479, 1481-82 (8th Cir. 1985).

Instead of District Court review of the conditions of release established on June 16, 2026, the Motion to Modify Conditions of Release was considered by Magistrate Judge David T. Schultz in an Order on July 14, 2026 (ECF# 182). Magistrate Judge Schultz granted in part and denied in part the Motion to Modify Conditions of Release, ordering that condition of release 7(g) was modified to read: "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: codefendants listed in the Indictment while outside the presence of counsel. The Government shall provide a No Contact list to the defendant, defense counsel, and U.S. Probation Office."[2]

Thoreson now renews her Motion to Modify Conditions of Release, seeking review of her conditions of release by the assigned District Court judge pursuant to §3145(a)(2). In the alternative, Thoreson appeals or seeks to reopen

[2] This No Contact list as ordered by Magistrate Judge Schultz has not yet been provided to counsel by the Government, nor (to counsel's knowledge) to the U.S. Probation Office.

the June 16, 2026, decision of Magistrate Judge Schultz pursuant to §3142(f)(2)(B).

## FACTUAL BACKGROUND

At the time of her initial appearance, a Bond Report had not yet been prepared for Ms. Thoreson. That report has now been prepared and filed with the Court. (ECF# 140). The Report finds that Ms. Thoreson is 39 years old, has resided in Minnesota for the past fifteen years after moving from South Dakota, owns her own home, has a master's degree from St. Thomas University, and is employed full-time as a special education teacher. She has no criminal conviction history and a single arrest on March 1, 2026, for Disorderly Conduct, which was dismissed by the Hennepin County District Court on April 21, 2026.[3] This material as established in the Bond Report is information that was not fully known at the time of the initial setting of conditions of release and is material to the issues of whether Thoreson poses a risk of flight and/or danger to others and the community.

Ms. Thoreson is charged with conspiracy "to prevent by force, intimidation, and threats, [federal agents] from discharging their duties of their officers (sic), in violation of Title 18 United States Code, Section 372." (ECF#1, p.3). There is no

[3] This charge appears to be related to the blockade of a street in unincorporated Hennepin County, and not on federal property, on March 1, 2026, and described in the Indictment. (ECF#1, ¶ 177-204). The nature of the charge, and subsequent dismissal, reflects the assessment of state law enforcement and prosecution authorities regarding the nature of Ms. Thoreson's conduct on that date.

factual allegation in the ninety-four page Indictment, which lists 260 alleged overt acts, that Ms. Thoreson had any direct contact (verbal or physical) with any federal agent or that Ms. Thoreson uttered a verbal statement that could constitute a threat or was intended to intimidate a federal agent. There is no factual allegation in the Indictment that Ms. Thoreson ever specifically endorsed or agreed with any co-conspirator to use force, threats or intimidation to impede federal agents.[4] The Indictment does not allege that any individual, much less a federal agent, was injured as a result of the allegations in Count I of the Indictment.

The Indictment alleges that Ms. Thoreson was a member or associate of Direct Action Minnesota (DAMN) and other groups such as the Black Cat Worker Collective (BCWC). The Indictment does not allege that mere membership or association with either DAMN or BCWC is itself illegal. The Indictment, in fact, describes activities of each group which are undoubtedly legal and constitutionally protected: support for militant class struggle, community self-defense, digital campaigning, and community organizing. (ECF#1, p.3-4). By proffer, and by evidentiary submission at any hearing on this Motion, Thoreson would establish that these organizations also engage in activities such as fundraising for abortion access, workplace and union organizing, and mutual aid to provide economic and social support to community members. Ms. Thoreson, and many if not all of her

[4] For purposes of §372, "[a]n act involves "force" if it threatens or results in violence or if it threatens or results in harming or destroying property or harming or killing people." Final Jury Instructions, *United States v. Forral, et. al.,* 25-CR-111(RLP), ECF#161, p. 21 (Eastern District of Washington) (5/27/26).

charged co-defendants, have engaged in this constitutionally protected associational activity together for many years.

ARGUMENT

Based on the above facts, including Ms. Thoreson's personal characteristics and the nature and circumstances of the offense charged, Ms. Thoreson should have been released on an unsecured appearance bond, without any additional conditions, pursuant to 18 USC §3142(b). There is nothing in the record to support a finding that such release would not be sufficient to assure the appearance of Ms. Thoreson as required or would endanger the safety of any other person or the community. Absent such a determination, supported by factual findings, release under 18 USC §3142(b) is required.

If a Court determines that additional conditions are required to be imposed pursuant to 18 USC §3142(c), those conditions may only be imposed to the degree that the Court "determines" that they are the "least restrictive conditions" necessary to reasonably assure the appearance of Ms. Thoreson as required and the safety of any other person or the community. Thus, while a restriction on "personal association" may be ordered, §3142(c)(1)(B)(iv), such a restriction may not be imposed to achieve some purpose other than Ms. Sorenson's appearance as required or the safety of other persons or the community. Both Magistrate Judge Docherty's original release order of June 16, 2026, and Magistrate Judge Schultz's amended release order of July 14, 2026, did not provide any legal reasoning or factual basis to support any judicial determination as to why such a restriction on

Thoreson's contact with co-defendants was an appropriate condition under the Bail Reform Act, necessary to reasonably assure Thoreson's appearance as required or prevent her from endangering the safety of any other person or the community.

Restricting Ms. Thoreson's right to communicate with her co-defendants does not have any logical relationship to assuring her appearance at future proceedings as required and there is nothing to indicate that Ms. Thoreson poses any risk of flight. The restriction on contact with co-defendants cannot be justified as necessary to assure her appearance as required.

While no evidence in the record would support such a determination in this case, a restriction on co-conspirators having contact with each other could potentially be justified as a condition necessary to ensure the safety of others or the community to be protected from continuing criminal activity. Such a determination, however, would not be justified in this particular case. The Indictment simply does not allege any criminal activity after March 1, 2026, other than expressive and associational activity of engaging in speaking tours, publishing articles, and publicly observing and documenting the behavior of law enforcement as engaged in by thousands, if not tens of thousands, of other Minnesotans since December of 2025. The Indictment does not allege that Ms. Thoreson herself engaged in any activity related to the charged conduct after March 2, 2026 (ECF#1, p.66). There simply is no basis to make a determination

that a ban on contact with co-defendants is required to prevent future criminal activity by Ms. Thoreson.

Ms. Thoreson also contends that the restriction on contact with co-defendants infringes on her rights to free speech and association under the First Amendment. By charging Ms. Thoreson, and then seeking such a condition of release, the Government effectively prevents Ms. Thoreson and others from engaging in the political, social, and community organizing activity in which they have engaged in over many years. This is of particular concern in light of the substantial evidence that Ms. Thoreson is subject to prosecution based on the political agenda and viewpoint discrimination of the Department of Justice and executive branch. The Indictment specifically seeks to link Ms. Thoreson with an entity labeled "AntiFa"[5] which in turn links this prosecution to National Security Presidential Memorandum-7, issued September 25, 2025, and which called for the targeting and prosecution of persons expressing views characterized as involving "anti-Americanism, anti-Capitalism, and anti-Christianity." The propensity of this Department of Justice to misuse the legal system for political purposes is also well established. As noted by the Chief Judge for the United States District Court of Minnesota Patrick Schiltz, in an order quashing subpoenas issued by the federal government to Governor Tim Walz, Attorney General Keith Ellison, and the mayors of Minneapolis and St. Paul, "the subpoenas were issued as part of an unconstitutional effort to coerce Minnesota officials into assisting the federal

[5] Short for "Anti-Fascist."

government with enforcing civil immigration laws and to harass and retaliate against them for failing to do so."[6] In granting a preliminary injunction in *Tincher v. Noem*, United States District Court Judge Katherine Menendez found substantial evidence to conclude that federal agents had been engaged in a pattern of retaliation against peaceful protest activity, had arrested or detained persons in retaliation for their protected conduct without probable cause that they had committed a crime, used pepper-spray and non-lethal munitions on peaceful protesters, and stopped and detained persons in their vehicles without reasonable suspicion.[7] Further, it is particularly ironic that Ms. Thoreson faces prosecution in this matter by an Administration which has pardoned convicted criminals who rioted at the United States Capitol on January 6, 2021 – and actually injured and impeded federal officers – but had the good fortune to share the political views of the Administration.

While Ms. Thoreson may potentially be punished if the Government proves by proof beyond a reasonable doubt at trial that she agreed with others to commit illegal acts, she should not be punished at this time – as a person presumed innocent, unless and until proven guilty – by restricting her association with others and her ability to carry out the activities of DAMN and BCWC which are undoubtedly legal and constitutionally protected.

---

[6] *In Re Grand Jury Subpoenas,* 26-mc-43(PJS), District of Minnesota, Order, 6/22/2026, p.14.

[7] *Tincher v. Noem*, 25-cv-4669(KMM/DTS), District of Minnesota, Order, 1/16/2026.

Ms. Thoreson also contends that the restriction on contact with her co-defendants interferes with her right to prepare a defense:

> A criminal defendant "has a constitutional right 'to conduct his own defense.'" *United States v. Smith*, 830 F.3d 803, 808 (8th Cir. 2016), *quoting Faretta v. California*, 422 U.S. 806, 836, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Conducting a defense necessitates adequate time and resources to prepare for trial. *See Kansas v. Ventris*, 556 U.S. 586, 590, 129 S. Ct. 1841, 173 L. Ed. 2d 801 (2009) ("[T]he opportunity . . . to prepare a defense for trial" with one's attorney is "the core" of the Sixth Amendment right to counsel."). Denying a self-represented criminal defendant the ability to prepare for trial can effectively abrogate his constitutional right to self-representation. *See Powell v. Alabama*, 287 U.S. 45, 59, 53 S. Ct. 55, 77 L. Ed. 158 (1932) ("It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case."
>
> United States v. Ladeaux, 61 F.4th 582, 586 n.4 (8th Cir. 2023)

The allegations in the Indictment refer to attending meetings, with tens or hundreds of people, as “overt acts.” They describe events occurring over a period of months in what was a highly charged, traumatic atmosphere for many Minnesotans as they watched federal agents kill two of their neighbors, unlawfully shoot others, and detain and disappear thousands of community residents. Individual memory is not absolute. Ms. Thoreson and her co-defendants have the right to meet and collectively discuss the truth of the Government’s allegations – to help each other recall and answer questions such as: Who was at that meeting? What was said? What is the Government leaving out? These conversations are critical to Ms. Thoreson’s ability to effectively participate in the preparation of her defense and to have effective assistance of counsel. Channeling these

conversations exclusively through counsel, or through meetings at which all fifteen co-defendants and their counsel are present, would be impossible given the number of defendants and attorneys and the breadth and nature of the Government's allegations.

Ms. Thoreson also adopts by reference the arguments of her co-defendant Erick Davis in Defendant's Motion for Amendment of Condition of Release (ECF#150), and his Defendant's Appeal/Motion for Amendment of Condition of Release (ECFF# 190), co-defendant Emmett Doyle in Defendant's Motion for Amendment of Condition of Release (ECF#152), and co-defendants Natasha Rakotz and Douglas Misterek in Defendants Rakotz and Misterek's Joint Motion for Amendment of the Conditions of Release (ECF#160), in support of this Motion.

## CONCLUSION

WHEREFORE, Treasure Cay Thoreson requests that the District Court conduct a *de novo* review of her conditions of release as required by statute at §3145(a). Thoreson further requests that if the District Court finds that release under §3142(b) is not appropriate, that any such "determination" under §3142(c)(1) be supported with factual findings as to why release under §3142(b) is not appropriate. As to any condition of release imposed by the Court pursuant to §3142(c)(1), as necessary ensure her appearance and the safety of others or the community, Thoreson requests that the Court make specific factual findings as to why the condition, including the condition restricting her contact with co-

defendants outside the presence of counsel, is the "least restrictive further condition" required under under §3142(c)(1)(B). Accordingly, Thoreson moves to amend and appeals the existing condition of release established by Magistrate Judge Schultz on July 14, 2026, by striking the limitation on her ability to communicate with her co-defendants outside the presence of counsel as set forth in amended Additional Condition of Release 7(g).

Date: July 24, 2026

S/BRUCE D. NESTOR

Bruce D. Nestor, 0318024 – MN
DE LEÓN & NESTOR, LLC
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
(612) 436-3664 – Facsimile
nestor@denestlaw.com

ATTORNEY FOR TREASURE THORESON