UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-cr-115(2) (KMM/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S APPEAL/MOTION** |
| vs. | ) | **FOR AMENDMENT OF** |
| | ) | **CONDITION OF RELEASE** |
| EMMETT DOYLE, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Emmett Doyle, through undersigned counsel, pursuant to 18 U.S.C. § 3145(a), hereby moves the Court for an Order amending his conditions of release to remove the restriction that he not have direct or indirect contact with any co-defendants listed in the Indictment other than in the presence of counsel. (Order 7/14/2026, Doc. 182 at 2, amending Order Setting Conditions of Release, Doc. 40, Page 2, 7(g)). On June 16, 2026, Mr. Doyle appeared before the Court for his initial appearance on the indictment in this matter. At that time, the Court had not yet appointed undersigned counsel, and Mr. Doyle was represented by the Federal Defender's Office on a temporary basis. Mr. Doyle now moves to assert his right to a *de novo* review of this condition.[1] *United States v. Maull*, 773 F.2d 1479, 1481-822, 1484 (8th Cir. 1985).

Mr. Doyle previously filed a similar motion to review the condition imposed by Magistrate Judge John Docherty at the initial appearance that unconditionally prevented contact with co-defendants. (Doc. 152). The motion was then revised by Magistrate Judge David Schultz, who amended the condition to prohibit contact with co-defendants except in the

---

[1] Although co-counsel appeared at the most recent status conference, co-counsel had only joined the case that morning and therefore did not have a meaningful opportunity to raise this issue. This motion should not be construed as a waiver of Mr. Doyle's continuing objection to the challenged release condition.

presence of counsel. Mr. Doyle is relying on 18 U.S.C. § 3145(a)(2), which authorizes a motion to the Court for amendment of the conditions of release where the release order was by a Magistrate Judge. Mr. Doyle requests that the District Court judge review the release provision prohibiting contact with co-defendants *de novo.* The amendment to allow contact in the presence of counsel is an improvement, but it is not wholly sufficient as any prohibition of contact is inappropriate and unnecessary.

The Bail Reform Act provides that the Court must impose the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The condition prohibiting contact with co-defendants is not necessary to reasonably assure Mr. Doyle's appearance as required or the safety of any other person and the community. Further, the condition places an undue burden on Mr. Doyle and violates his constitutional rights.

There was no suggestion that the challenged condition was necessary to prevent any risk of flight. The Magistrate Judge stated at the hearing addressing the detention of Mr. Doyle and four other co-defendants, "I do not find that any of these defendants pose such a risk [of flight]." (6/16/26 Tr., Doc. 131 at 43:24-44:1). The restriction is likewise unnecessary to protect the community because Mr. Doyle poses no risk to the community. He has no prior criminal history and no history of any failure to appear in Court. Mr. Doyle has complied with all the conditions of his release. He appeared in court for his arraignment and status conference. Mr. Doyle has very strong ties to the community with an established residence in Minnesota. He is employed in Minnesota and works as a carpenter and folk musician. Mr. Doyle has every incentive to remain law-abiding and conduct himself in accordance with the law to preserve his reputation and career.

The Magistrate Judge did not specifically address why he believed that no contact with co-defendants was a necessary condition. The government appeared to argue that this condition was based on the charge of conspiracy to impede a federal officer.[2] However, there was no showing as to how Mr. Doyle, with no prior criminal record, or his co-defendants, with minimal, if any, criminal records, would be likely to engage in any criminal conspiracies or other illegal activity while having to defend themselves against federal felony charges. In denying the government's request for a detention hearing, the Magistrate Judge explained that, based on the most serious allegation in the Indictment involving the crashing of a vehicle, "I'm invited to then expand that to say that because that happened, there will also be threats against witnesses and jurors. And that is a step I will not take." (Doc. 131 at 44:513). There is no basis for concluding that Mr. Doyle and his co-defendants pose any risk to the community by communicating with one another. Further, although the Court adopted this condition for all defendants, when informed that two of them were roommates, the Court removed the condition as to them. (Tr. Of Initial App. Of Isaac Sant, et al. at 45-46). If these conditions were truly a prerequisite to ensure that the defendants do not pose a risk of flight or danger to the community, the Court would not have removed the condition.

In response to the motion to amend conditions previously brought by Mr. Doyle and seven other co-defendants, the government claimed that "No contact orders are a typical condition of release and are typical of cases where there are many co-defendants in the indictment" and cited four other cases in this district (two without any identifying case numbers) where a similar condition of release was purportedly imposed. (Doc. 176 at 1). The government

---

[2] The full charge is conspiracy to impede or injure a federal officer, but there is no allegation in the 94-page Indictment that any defendant made any agreement or plan to injure a federal officer.

3

merely cited the form release order in each case without pointing to any reasoning in the record in any of those non-binding cases to justify the conditions. Further, the government did not attempt to discuss or compare the facts that may have justified the condition in those cases to the relevant facts of this case. The government did not attempt to substantively explain why the disputed condition was necessary to prevent risk of flight or protect the community. (Doc. 176).

In his Order modifying the condition, Magistrate Judge Schultz quoted the government's statement that no contact orders are a typical condition of release where there are many co-defendants, but provided no analysis of the validity of that assertion or any explanation as to why he was modifying the condition only in part to allow contact in the presence of counsel but otherwise leaving the condition in place. (Doc. 182). Mr. Doyle and his co-defendants have raised substantial arguments challenging the condition and are entitled to meaningful consideration, analysis, and explanation from the Court.

It is worth noting that not only do Mr. Doyle and his co-defendants lack any prior history indicating danger to the community, but the alleged offense and conspiracy itself do not demonstrate a desire to cause harm, and certainly not harm of the sort common in most criminal offenses. The alleged conduct was not in any way economically motivated, as alleged in most criminal conspiracies, which may incentivize continued criminal conduct. The alleged conduct consisted of non-violent resistance intended to protect the community from harm being caused by a massive campaign of violent federal repression against the community. The federal government's large-scale violations of constitutional and human rights are well documented by authoritative human rights organizations and this court. *See* Human Rights Watch, "A Manufactured Crisis" Minnesota Communities Terrorized by the Federal Government, 2026, www.hrw.org/sites/default/files/media_2026/06/us_minneapolis0626%20web_0.pdf; Minnesota

4

v. Noem, 818 F. Supp. 3d 1030 (D. Minn. 2026); Tincher v. Noem, 816 F. Supp. 3d 931 (D. Minn. 2026); Hussen v. Noem, Case No. 0:26-cv-00324, 2026 U.S. Dist. LEXIS 47700 (D. Minn., filed March 9, 2026). As Human Rights Watch's summary explained, " The Trump administration's deployment of thousands of federal immigration agents to Minnesota between December 2025 and March 2026 led to widespread human rights violations, terrorized residents with long-lasting effects, and spotlighted the deeply abusive patterns in US immigration enforcement." www.hrw.org/news/2026/06/18/us-federal-government-terrorized-minnesota-communities. The Court found in a civil lawsuit challenging the federal government's actions:

> Plaintiffs have made a strong showing that Operation Metro Surge has had, and will likely continue to have, profound and even heartbreaking, consequences on the State of Minnesota, the Twin Cities, and Minnesotans. Since Operation Metro Surge began, there have been multiple shootings of Minnesota residents by federal immigration enforcement agents. Additionally, there is evidence that ICE and CBP agents have engaged in racial profiling, excessive use of force, and other harmful actions.

Minnesota v. Noem, 818 F.Supp.3d at 1048.

In a recent decision, this court issued a rare ruling granting a motion to quash the federal government's grand jury subpoenas for records from state and municipal offices of Minnesota elected officials regarding their responses to Operation Metro Surge. *In re Subpoenas,* 2026 U.S. Dist. LEXIS 139487 (D. Minn, June 22, 2026). Judge Schiltz noted in his decision, "During the surge, there were widespread reports of DHS agents engaging in abusive and dangerous tactics seemingly designed to escalate tensions and destabilize the community" *Id.* at *4. Judge Schiltz found "overwhelming evidence that these subpoenas were not issued to investigate, but to harass, coerce, and retaliate. *Id.* at *27. The subpoena decision adds to the overwhelming public record demonstrating that not only was Operation Metro Surge a severely repressive and abusive

offense against the community, but that the Trump administration has shown a modus operandi of using the criminal justice system to harass, coerce, and retaliate against political opponents.

When evaluating the necessity for any restrictions on Mr. Doyle and his co-defendants' freedom while on release, it is appropriate for the Court to consider the context of the case which arises from well-documented abuse and repression by the federal government. This case should be recognized as an extension of the federal government's repressive conduct and weaponization of the legal system against those who dissent. While the government is expending massive effort and resources to prosecute Mr. Doyle and his co-defendants, along with dozens of other people in this district for non-violent resistance, it has not brought a single charge against any federal officers or agents who have engaged in well-documented abusive conduct. The federal officers who are on video shooting and killing Alex Pretti and Renee Good without justification have not been charged for their crimes. *See "A Manufactured Crisis"* at 57-62. The ICE officer who shot Julio Cesar Sosa-Celis in the leg without justification and then fabricated a story that Sosa-Celis and a co-defendant had violently assaulted him has not faced any charges. *Id.* AT 63-65; *United States v. Aljorna and Cesar Solis,* Case No. 26-MJ-23 (PAM/DLM), Doc. 48 (D. Minn, 02/22/2026) (government moves to dismiss charges with prejudice, recognizing "Newly discovered evidence in this matter is materially inconsistent with the allegations in the Complaint Affidavit… as well as the preliminary hearing testimony.") The public record, including prior cases before the Court, compels recognition that this prosecution may well not be based on legitimate law enforcement and pursuit of justice but rather as part of the government's

repressive political goals[3]. In such a context, the government's request for restrictions on Defendant's freedom should be evaluated with far more caution than in a typical case.

Mr. Doyle does not challenge the restriction prohibiting contact with alleged victims and witnesses in this case (provided that the government provides the required No Contact List). However, Mr. Doyle challenges the prohibition on communication with co-defendants due to the significant hardship it imposes. Several of the co-defendants are among his closest friends. They socialize regularly and rely on one another for emotional support, advice, and community. Among Mr. Doyle's co-defendants are the best man at his wedding, friends he considers brothers, and people he depends on for support as he navigates his divorce. Additionally, it is understandable that Mr. Doyle would want to reach out for support from his closest friends who are also going through this stressful experience. Therefore, the prohibition of contact with co-defendants imposes a hurtful, unfair, and unnecessary burden.

Additionally, this prohibition on contact with co-defendants interferes with Mr. Doyle's constitutionally protected right to "freedom of association," based on the understanding that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984).

The prohibition on contact with co-defendants also unduly impairs Mr. Doyle's ability, and that of his co-defendants, to adequately prepare their legal defenses. Mr. Doyle intends to

---

[3] Kovensky, Josh. *Exclusive: Trump DOJ's Top 'Antifa' Prosecutor Marched With Crowd on Jan.* 6. Talking Points Memo. (July 15, 2026). https://talkingpointsmemo.com/news/exclusive-trump-dojs-top-antifa-prosecutor-marched-with-crowd-on-jan-6

actively participate in the preparation of his defense, and communication among co-defendants is necessary to facilitate that participation. Restricting such contact unnecessarily interferes with the co-defendants' ability to assist counsel, coordinate their defenses where appropriate, and meaningfully exercise their Sixth Amendment rights to participate in their defense and receive the effective assistance of counsel.

Contact among the co-defendants is necessary to adequately prepare a defense in a case the government itself has characterized as extraordinarily complex, warranting a continuance of at least 90 days for all deadlines. (Doc. 22). The government has stated:

Discovery is voluminous and complex, totaling over 20 TB (terabytes) of information as of the date of this filing, with more expected imminently. It includes over 44,000 pages of written reports and photographs, as well as approximately 2.5 TB of surveillance and body camera videos, 15 TB of messages exchanged by the defendants via the Signal application, and other content obtained through search warrants. (Doc. 22 at 4).

Mr. Doyle and his counsel will not be able to fully analyze the voluminous discovery on their own and will necessarily need to communicate with co-defendants and their counsel to efficiently review, organize, and understand the evidence. It will be necessary for Mr. Doyle to communicate with his co-defendants to ensure that each is aware of all pertinent information and to facilitate the sharing of knowledge regarding evidence that may contradict or place the allegations in the Indictment and the voluminous discovery in a different context. It will also be necessary for Mr. Doyle and his co-defendants to not only meet in the presence of their attorneys but also on their own in order to fully inform themselves of the evidence in this case. Since the attorneys will not have sufficient time to meet with each other and the Defendants to review the extremely voluminous discovery, it will be necessary for the Defendants to meet with each other independently to discuss the evidence.

## CONCLUSION

The condition of release prohibiting Mr. Doyle and his co-defendants from having any contact with each other is unnecessary, personally burdensome, and seriously impedes the ability to prepare a defense. Mr. Doyle respectfully requests that this condition be stricken.

Dated:  July 24, 2026

KIEFFER LAW LLC

By s/Shauna Kieffer
Shauna Kieffer, Esq. (389362)
Thomas Harmon V, Esq. (0289759)
The Flour Exchange Building
301 4th Ave. South Suite 1050
Minneapolis, Minnesota  55415
(612) 418-3398
shauna@kieffercriminaldefense.com