UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil File No. 26-cr-115 (KMM/DTS) |
| Plaintiff, | |
| vs. | |
| Nathan Junho Kim (10) "Nat Kim", | **OBJECTION TO MAGISTRATE JUDGE'S ORDER AND MOTION FOR AMENDMENT OF CONDITIONS OF RELEASE PURSUANT TO 18 U.S.C. § 3145(A)(2)** |
| Defendant. | |

## **INTRODUCTION**

Pursuant to 18 U.S.C. § 3145(a)(2) and Local Rule 72.2, Defendant Nat Kim[1] respectfully objects to, and asks the District Court to modify Magistrate Judge Schultz's July 14, 2026 Order to Modify Conditions of Release, ECF No. 182 (the "Order"), to remove the restriction prohibiting her from contacting or communicating with her co-defendants outside the presence of counsel (the "no-contact condition"). Kim previously moved the Court to modify Magistrate Judge Docherty's conditions of release pursuant to 18 U.S.C. § 3145(a)(2). ECF No. 57 ("June 16 Order"); ECF No. 175 (Kim's Motion to Modify Conditions of Release). Section 3145(a)(2) requires the District Court judge to hear any such motion. *See United States v. Armstrong*, No. 26-CR-25 (1) (LMP/DLM), 2026 WL 509035, at *2 (D. Minn. Feb. 24, 2026). However, Magistrate Judge Schultz reviewed Magistrate Judge Docherty's order and made only a slight clarification

---

[1] The Defendant uses female pronouns and uses the name "Nat Kim."

4899-4663-8017\3

expressly allowing co-defendants contact with each other while their attorneys are present. *See* ECF No. 182. Kim now requests that the District Court review the order issued by Magistrate Judge Schultz to consider whether there is any basis for the no-contact condition in this case.

The no-contact condition is not the least restrictive condition necessary to ensure Kim's appearance at trial and the safety of the community and imposes significant hardship on Kim's ability to prepare for trial. Accordingly, the Court should modify Kim's conditions of release to permit her to communicate with her co-defendants to prepare a defense and to participate in community programs. In the alternative, the Court should at minimum permit Kim to have incidental contact with co-defendants Douglas Misterek (12) and Alec Stewart (11) while engaged in community and non-profit activities as long as the defendants do not discuss the details of this case outside the presence of their counsel.

## BACKGROUND

### I.       Kim Is Heavily Involved in the Minneapolis Community

Kim is an artist in the Twin Cities and is heavily involved in her community. Kim has lived in Minneapolis for approximately six years. Kim recently worked as a shop instructor at the University of Minnesota teaching students how to engage in material fabrication. Kim has worked for a variety of art institutions around the Twin Cities over the past six years. In addition to her work, Kim is also involved in a variety of community organizations, including serving on the conduct committee for the 501(c)(3) non-profit organization Southside Battletrain, which is "a group of South Minneapolis

2

artists, welders, engineers, builders, neighbors, cooks, and creators who collaborate to create interactive art spectacles for and by the community." *See* Southside Battletrain, https://www.southsidebattletrain.com/. Southside Battletrain is known for its May Day Parade in South Minneapolis, and other events throughout the year including Art-a-Whirl, and the Surley Brewing Darkness Day event. Kim is also an active volunteer with Chicago Avenue Fire Arts Center, a 501(c)(3) non-profit arts organization that focuses on art forms produced using heat, blacksmithing, metal casting, sculptural welding, and other techniques. *See* https://www.cafac.org/.

In addition to volunteering, Kim also works for Twin Cities Maker as a shop instructor. Twin Cities Maker is a 501(c)(3) non-profit organization offering a dedicated working space for artists, engineers, and makers, along with various instruction and classes. *See* https://tcmaker.org/.

## II.    Operation Metro Surge

As this Court is aware, in the late winter of 2025 and early 2026, the federal government initiated "Operation Metro Surge," which saw thousands of federal agents arrive in Minneapolis and Saint Paul. The results of Operation Metro Surge were disastrous for the community. As this Court noted in a recent case addressing the Operation:

> Plaintiffs have made a strong showing that Operation Metro Surge has had, and will likely continue to have, profound and even heartbreaking, consequences on the State of Minnesota, the Twin Cities, and Minnesotans. Since Operation Metro Surge began, there have been multiple shootings of Minnesota residents by federal immigration enforcement agents. Additionally, there is evidence that ICE and CBP agents have

3

> engaged in racial profiling, excessive use of force, and other harmful actions. And Defendants do nothing to refute the negative impacts described by Plaintiffs in almost every arena of daily life, from the expenditure of vast resources in police overtime to a plummeting of students' attendance in schools, from a delay in responding to emergency calls to extreme hardship for small businesses. It would be difficult to overstate the effect this operation is having on the citizens of Minnesota, and the Court must acknowledge that reality here.

*Minnesota v. Noem*, 818 F. Supp. 3d 1030, 1048 (D. Minn. 2026) (Menendez, J.); *see also In re Grand Jury Subpoenas,* No. 26-MC-43 PJS, 2026 WL 1783899, at \*2 (D. Minn. June 22, 2026) (Schiltz, C.J.) ("The surge was the largest civil immigration enforcement operation in DHS history, despite the fact that the percentage of Minnesota's population consisting of undocumented immigrants is estimated to be less than half the national average. During the surge, there were widespread reports of DHS agents engaging in abusive and dangerous tactics seemingly designed to escalate tensions and destabilize the community. Also during the surge, two American citizens — Renee Good and Alex Pretti—were killed by DHS agents…"). Thousands of people protested Operation Metro Surge. *See* "Thousands Rally Against ICE in Minneapolis in Below-Zero Temperatures," Matt Lavietes and Nicole Acevedo, NBC News, https://www.nbcnews.com/news/us-news/ice-out-rally-minneapolis-immigration-protest-rcna255631.

## III.   The Indictment

On June 11, 2026, the government procured an indictment alleging Kim and 14 other co-defendants conspired to impede a federal officer in violation of 18 U.S.C. § 372.

*See* ECF No. 1 (the "Indictment").[2] Among other things, the government claims Kim attended meetings, commented on a White House press release, offered to share a Go Fund Me page, and helped unload some metal objects from a truck. Indictment ¶¶ 40, 80, 98, 132, 134, 166, 198-99. The Indictment makes no allegations that Kim harmed or threatened to harm another, let alone a federal officer.

## IV. Kim's Conditions of Release

On June 16, 2026, during Kim's initial appearance, the Court issued an Order Setting Conditions of Release in which the Court released Kim prior to trial subject to several conditions. ECF No. 57. Despite the fact that the government failed to offer any evidence of other basis for its request that the defendants be ordered not to have contact with each other, *see* ECF No. 132 at 9:25-26:23, the Court granted the government's request. Among other things, the Court ordered Kim to "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: Codefendants listed in the Indictment." June 16 Order at 7(g).

Kim moved to amend her conditions of release. *See* ECF No. 175. The government submitted a 2-page response, claiming that "no contact orders are a typical condition of release and are typical in cases where there are many co-defendants in the indictment." ECF No. 176 at 1. The government again failed to identify any basis for the

---

[2] Section 372 proscribes conspiring to threaten, injure, or impede a federal officer engaged in the lawful discharge of his duties. The Indictment does not allege that the defendants conspired to threaten or injure anyone. The Indictment also alleges other defendants violated other laws, but the only allegations as to Kim is the alleged violation of 18 U.S.C. § 372.

4899-4663-8017\3

no-contact condition, nor did attempt to explain why the no-contact condition is the "least restrictive" option to assure Kim's appearance or the safety of the community. *Id.*

Despite the government's failure to provide any such evidence, Magistrate Judge Schultz issued an order that continues to impose the same condition of release. Order ¶ 2.

## ARGUMENT

Where, as here, the defendant is released prior to trial, the Bail Reform Act requires the Court to impose the "'least restrictive' conditions that 'will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . .'" *Moreland v. United States*, 968 F.2d 655, 659 (8th Cir. 1992) (citing 18 U.S.C. § 3142(c)(1)(B)). When a party moves the Court to amend the conditions of release under 18 U.S.C. § 3145(a)(2), the district court applies *de novo r*eview. *United States v. Maull*, 773 F.2d 1479, 1481-82 (8th Cir. 1985). In assessing whether the conditions imposed are the "least restrictive," courts consider: (1) "the nature and circumstances of the offense charged"; (2) the weight of the evidence against the person: (3) the history and characteristics of the person" including the person's connection to the community, criminal record, and whether the person was at the time of the alleged offense on probation or parole; and (4) the nature and seriousness of the danger to any person in the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Some courts have also applied heightened scrutiny to conditions for release that burden fundamental constitutional rights, as the no-contact condition burden's Kim's First Amendment right to freely associate with others. *See, e.g.*, *United States v. Wendt*, 650 F. Supp. 3d 672, 683 (S.D. Iowa 2023); *United States v. Martinez*, 4:21-cr-00107-

SMR-HCA, 2021 U.S. Dist. LEXIS 179162, 2021 WL 4169789, at *2 (S.D. Iowa Sept. 13, 2021) (applying heightened scrutiny to pretrial release conditions that result in sweeping restrictions on constitutional rights). Here, amending the Order to permit Kim to communicate with her co-defendants would result in the least restrictive combination of conditions, while still ensuring Kim's presence at trial and the protection of the community.

## I.      The Allegations Against Kim Do Not Support the No-Contact Condition

The first two factors under Section 3142(g)—the allegations against Kim and evidence against her—do not support the no-contact condition here. Count I of the Indictment alleges that Kim and others conspired to impede federal law enforcement. Critically, the Indictment does not allege that any defendant conspired to harm another. As to Kim specifically, the allegations allege that she attended meetings, offered to share a Go Fund Me page, commented on a White House press release, and unloaded some metal objects from a truck. Indictment ¶¶ 40, 80, 98, 132, 134, 166, 198-99. In addition, though the alleged "overt acts" continue through June 6, 2026, none of the conduct after at least March 1, 2026, is even plausibly criminal. *See* Indictment ¶¶ 206-269 (alleging the defendants organized meetings; organized a martial arts class; logging publicly available information about ICE vehicles; presenting at a speaking tour; commented on a White House press release; among other non-criminal conduct).

## II.     Kim's History and Characteristics Do Not Support the No-Contact Condition

Kim has no criminal history. Kim has lived in the community for approximately six years. Pretrial services assessed a minimal risk of nonappearance.

4899-4663-8017\3

**III. Kim Does Not Pose a Risk of Non-Appearance and the No Contact Provision Does Not Have Any Bearing on Any Risk of Flight.**

When Kim learned of the allegations made against them, she voluntarily surrendered and appeared for her initial appearance. Kim has not missed a court date and communicating with her co-defendants has no bearing on Kim's likelihood of continued appearance at court proceedings.

**IV. Kim Poses No Danger to the Community and the No-Contact Condition Does Not Provide Additional Security**

The no-contact condition is not necessary to prevent any danger to the community. As detailed in the Senate Judiciary Committee's Report on the Comprehensive Crime Control Act of 1983 (which adopted the Bail Reform Act of 1983), courts should impose a no-contact restriction under Section 3142(c)(1)(B)(v) "whenever the circumstances are such that the judge believes any form of victim or witness intimidation may occur." S. Rep. No. 225, 98th Cong., 1st Sess., 3, 14-15 (1983); *United States v. Delker*, 757 F.2d 1390, 1401 (3d Cir. 1985) (recognizing the legislative purpose behind this condition). The government has not identified any reason to think the defendants would seek to intimidate anyone based on contact with each other.

Further, as this Court has previously determined, Operation Metro Surge has concluded. *Tincher v. Noem*, 2026 U.S. Dist. LEXIS 45871, at *9 n.3 (D. Minn. Mar. 5, 2026) ("Were there a dispute, the Court would have no trouble finding that OMS is over."). The Indictment's allegations reflect this—including only benign allegations after at least March 2. As is clear from the Indictment, any alleged conduct occurred in response to the drastic increase of federal immigration officials in Minnesota, the

4899-4663-8017\3

drawdown of those same officials means there is no risk of similar alleged conduct in the future. There is no basis to believe that the defendant's continued contact with one another would result in any similar "danger" as that alleged in the Indictment because the factual predicates underlying the alleged conspiracy have subsided.

**V.      The Government's Exemplar Cases Do Not Support the Condition**

Contrary to the government's claims, no contact orders are not a "typical condition" and the cases the government cites to support this point are clearly distinguishable.

**A.      The Court Must Undertake a Case-by-Case Analysis When Imposing Conditions of Release**

The government asks this Court to impose a no-contact condition because it is "typical" without delving into whether such a condition is necessary in this case. Doing so is a violation of the Bail Reform Act, which requires an individualized determination of appropriate conditions. *See* 18 USCS § 3142(g); *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1128 (N.D. Iowa 2018) ("[T]he [Bail Reform Act] requires an individualized determination of the right to pre-trial release . . . ."); *United States v. Joshimar Rodriguez Lozano*, Case No. 4:17-cr-208, ECF No. 58 at 3 (S.D. Iowa July 20, 2018). ("The Bail Reform Act does require this Court to conduct an individualized analysis of a defendant when deciding whether pretrial release on conditions or detention would be appropriate."). In fact, "[a] condition of release can violate due process if it prevents the courts from evaluating and setting relevant conditions of pretrial release for criminal defendants on an individual basis." *Collins v. Daniel*, No. 1:17-CV-00776-RJ,

2017 U.S. Dist. LEXIS 224894, at *22 (D.N.M. Sep. 7, 2017). Whether a court has imposed no-contact conditions in other cases has no bearing on whether the defendants in this case—individually—require such a condition to attend court hearing and to keep the community safe.

**B.      The Government's "Typical" Cases Are Distinguishable**

Even if this Court were to ignore the Bail Reform Act's requirements to make an individualized determination as to the need for conditions of release for each defendant, the "typical" cases in which no-contact orders are imposed are not similar to this case. The government cites to the order setting conditions of release in the Minneapolis Highs Gang case—*United States v. Brown, et al.*, Case No. 23-cr-160—to support its view that "no contact conditions are typical" where there are many co-defendants in the indictment. But the Highs Gang Case and this case could not be more different. In *Brown*, the government alleged a wide-ranging gang conspiracy involving violence (including murder) and drug distribution. *See Brown*, Case NO. 23-cr-160 at ECF No. 450. Given the alleged structure of the gang and the consistent use of violence, communications in that case carried a legitimate risk of witness intimidation and other safety concerns. None of those circumstances exist here—the Indictment does not identify any power-structure to the alleged conspiracy that would create a risk that one defendant would follow another's commands, and the Indictment is devoid of any violent acts that it attributes to Kim.

4899-4663-8017\3

**VI.** **The No-Contact Condition Should Be Modified to Permit the Defendant to Have Contact with Any Co-Defendant in Connection with Work or Volunteering Activities**

If the Court is not inclined to lift the no-contact condition altogether, Kim respectfully requests that the Court permit her to have incidental contact with co-defendants while engaged in her work, volunteering, and other ad hoc community activities in the community. As noted above, Kim is involved in several community organizations, including Southside Battletrain, Chicago Avenue Fire Arts Center, and Twin Cities Maker. Other defendants are also involved with those organizations or may use their services.

For example, co-defendants Douglas Misterek and Alec Stewart have volunteered with Southside Battletrain. Misterek also volunteers for Chicago Avenue Fire Arts Center. The no-contact condition has already caused logistical headaches for the organizations, which have had to create separate email threads with Kim and Misterek and adjust schedules to ensure they do not inadvertently violate the no-contact condition by merely replying to an email or showing up at the same volunteer opportunity. The no-contact condition also creates a risk for Kim with her position at Twin Cities Maker—Kim does not control who uses the space, and the no-contact condition creates a risk of an unintentional violation if a co-defendant were to work on an art project at the facility.

The no-contact condition has even meant that in some instances, Kim has had to forego volunteer opportunities with these organizations out of fear that she may unintentionally violate a condition of her release. Given that any contact would be incidental to Kim's role in the organizations, she respectfully requests that the Court add

4899-4663-8017\3

an exception to her conditions for release permitting contact while volunteering for Southside Battletrain or Chicago Avenue Fire Arts Center, or while working for Twin Cities Maker.

## **CONCLUSION**

For all the foregoing reasons, Kim respectfully requests that the Court Modify her conditions of release by striking the limitation on her ability to communicate with her co-defendants as described in Section 7(g) of the Court's Order to Modify Conditions of Release, ECF No. 182.

Dated: July 28, 2026

DORSEY & WHITNEY LLP

By */s/ Ian Blodger*
Surya Saxena (#0339465)
saxena.surya@dorsey.com
Michael Rowe (#0392598)
rowe.michael@dorsey.com
Ian Blodger (#0398254)
blodger.ian@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

*Attorneys for Defendant Nat Kim*

4899-4663-8017\3